J-S07031-20

2020 PA Super 118

| M.B.S., | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| W.E., | : | |
| | : | |
| Appellant | : | No. 3087 EDA 2019 |

Appeal from the Order Entered October 1, 2019
in the Court of Common Pleas of Bucks County
Civil Division at No(s): No. 2018-60481

BEFORE:   NICHOLS, J., KING, J. and STRASSBURGER, J.[*]

OPINION BY STRASSBURGER, J.:                    **FILED MAY 19, 2020**

W.E. (Mother) appeals from the order entered October 1, 2019, which granted sole legal custody of O.S., who was born in May 2002, to M.B.S. (Father).  We dismiss this appeal as moot.

This case has a complex procedural history, which we summarize by way of background.  Mother and Father, who have been divorced since 2005, had been sharing physical and legal custody of O.S. pursuant to a June 25, 2018 order of court.  On January 28, 2019, Mother filed a protection from abuse (PFA) petition against Father following an incident at her home the previous night.[1]  Mother's petition was granted, a temporary

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Although some of the facts and issues are intertwined, the custody matter (A06-18-60481-C) and the PFA matter (A06-18-60481-A-40) are separate matters under separate statutes and listed on separate dockets.  Mother
*(Footnote Continued Next Page)*

PFA order was entered against Father, and a hearing was scheduled for February 6, 2019.[2] Mother, Father, O.S., and a neighbor testified at the PFA hearing about the January 27, 2019 argument between Mother and Father. At that time, O.S. was 16 years old and in the 10th grade. He has a diagnosis of Pediatric Automimmune Neuropsychiatric Disorder Associated with Streptococcal Infections (PANDAS) and Obsessive-Compulsive Disorder (OCD).[3] Mother's attorney challenged O.S.'s competence at the PFA hearing, but following questioning to assess his competence, the trial court determined that O.S. understood "the seriousness and importance of the oath and the consequences for testifying falsely." Trial Court Opinion, 11/15/2019, at 2. Following the hearing, the trial court denied Mother's PFA petition.

The PFA matter did not conclude with the denial of Mother's petition, as on the day prior to the PFA hearing, Mother had filed a petition for

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯

only appealed from the October 1, 2019 order in the custody matter, and did not move to admit any documents or incorporate any testimony from the PFA matter into the custody matter. Thus, the transcripts from the PFA matter are not part of the certified record in the custody matter on appeal. The same trial judge, the Honorable Alan Rubenstein, presided over both matters.

[2] On February 1, 2019, Father filed a PFA petition against Mother. His request for temporary PFA relief was denied, but the trial court scheduled a hearing on the petition alongside Mother's petition. However, Father ultimately withdrew his PFA petition.

[3] The parties dispute whether O.S. is also on the autism spectrum; Mother insists that he is, but Father disagrees.

contempt alleging that Father violated the temporary PFA order on February 1, 2019. *Id.* at 3. On February 27, 2019, the trial court conducted a hearing on Mother's petition for contempt. At the conclusion of the hearing, the trial court denied the petition, but *sua sponte* granted Father sole legal and physical custody of O.S. on a temporary basis. *Id.* According to the trial court, it did so because during the hearing, O.S. testified that a few days after the February 1, 2019 incident between his parents, Mother and O.S. were arguing, and Mother threatened to crash the car she was driving with him in it and kill him. *Id.* at 4. Notably, Mother did not appeal from this decision.

Meanwhile, in the custody matter, Father had filed a petition to modify custody on February 15, 2019. In the petition, Father sought primary custody. The parties were unable to resolve the custody dispute during a custody conference, and the trial court conducted hearings on Father's petition on May 24, 2019, and September 13, 2019. While the custody matter was pending, the temporary order from the PFA matter remained in effect.

During the custody hearings, the parties and other witnesses described the contentious relationship between Father and Mother. For example, Father admitted during his testimony that his wife had called Mother's employer to report complaints about Mother's behavior.

Mother was facing pending summary harassment, disorderly conduct, and criminal mischief charges based upon two envelopes with Mother's return address which Father received in the mail. Enclosed in the envelopes were Mother's credit card statements and Mother and Father's divorce decree, both of which were smeared with a brown substance that looked and smelled like feces.

A caseworker for Bucks County Children and Youth Social Services Agency testified that the agency had received three anonymous calls alleging abuse of O.S. and O.S.'s half-sibling by Father. As part of her investigation, the caseworker contacted Mother, and Mother used some of the same language as the anonymous caller when discussing her concerns about Father with the caseworker. After investigation, Bucks County Children and Youth determined the reports against Father were unfounded.

O.S. testified at both custody hearings regarding his complex feelings about Mother and described various arguments and incidents between them. He testified about his concerns regarding Mother's volatility and rambling discourse, including her verbal threat to crash the car and kill him that he had testified about at the PFA hearing. N.T., 5/24/2019, at 131-34. At the first hearing, O.S. stated that he loves Mother, but he wanted her to get therapy before he saw her. By the second hearing, he testified that he was okay with seeing her, but only for about an hour a week and he was too scared to drive in the car with her.

At the conclusion of the September 13, 2019 hearing, the trial court opined that the "case crie[d] out for a very simple solution." N.T., 9/13/2019, at 84. Because O.S. was almost 18 years old, the trial court declined to enter an order directing O.S. to be with Mother and Father at specific times. Instead, the trial court left it up to O.S. to determine when he wants contact with Mother, observing that O.S. wanted to have some contact with Mother, but was afraid to be with her. The trial court vacated any current custody orders and declined to enter a new order of custody.

Father timely filed a motion to reconsider the order vacating all custody orders, citing a need for someone to oversee O.S.'s education and health until O.S.'s 18th birthday. Without conducting another hearing, the trial court granted Father's motion for reconsideration and entered an order on October 1, 2019, awarding Father sole legal custody. Mother timely filed a motion for reconsideration of the October 1, 2019 order, but the trial court never ruled on her motion. Mother also timely filed a notice of appeal from the October 1, 2019 custody order.[4]

Mother now raises six issues on appeal, which we reorder for ease of disposition.

> I. Whether the trial court erred in failing to appoint a guardian *ad litem* [GAL] in this case despite the special needs of O.S.?

---

[4] Both Mother and the trial court complied with Pa.R.A.P. 1925.

II.    Whether the trial court erred as a matter of law in failing to conduct a proper competency evaluation prior to qualifying O.S. as a witness?

III.   Whether the trial court erred in not requiring a psychological evaluation of Father?

IV.    Whether the trial court failed to exercise impartiality in this case in that the court expressed biased and inappropriate opinions of Mother during closing remarks after the allegations against Mother had been proven false during the trial and entertained Father's motion for reconsideration while ignoring Mother's motion for reconsideration?

V.     Whether the trial court committed an error of law when the court granted Father's motion for reconsideration without additional testimony from the parties?

VI.    Whether the trial court erred as a matter of law by failing to consider all of the factors for awarding custody under 23 Pa.C.S. [§] 5328 before entering an order granting Father legal custody?  Specifically, the court failed to address the special needs of O.S. regarding healthcare and education or Mother's role as primary caregiver for O.S. since birth.

Mother's Brief at 5-6 (numbering supplied; suggested answers and unnecessary capitalization omitted; name designations changed).

Before we consider the issues Mother presents on appeal, we address a preliminary issue: whether the issues Mother presents are moot, or will become moot, upon O.S.'s upcoming 18th birthday.  We have said the following regarding the mootness doctrine.

As a general rule, an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot. An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an intervening change in the applicable law. In that case, an opinion of this Court is rendered advisory in nature. An issue

before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.

*In re J.A.*, 107 A.3d 799, 811-12 (Pa. Super. 2015) (citing *In re D.A.*, 801 A.2d 614, 616 (Pa. Super. 2002) (*en banc*)). We may address mootness *sua sponte,* "as we generally 'cannot decide moot or abstract questions, nor can we enter a judgment or decree to which effect cannot be given.'" *E.B. v. D.B.*, 209 A.3d 451, 461 (Pa. Super. 2019) (citing *In re L.Z.*, 91 A.3d 208, 212 (Pa. Super. 2014) (*en banc*), *rev'd on other grounds*, 111 A.3d 1164 (Pa. 2015)).

The issue in the instant case is whether we can enter an order with any legal force or effect regarding the order governing O.S.'s legal custody, given his impending 18th birthday. The Child Custody Act defines a child as "[a]n unemancipated individual under 18 years of age." 23 Pa.C.S. § 5322. This Court has examined an older version of the Child Custody Act, which defined child in a similar manner. In that case, this Court determined that a trial court lacked subject matter jurisdiction under the child custody statute to order the party's intellectually disabled 18-year-old daughter to visit with her mother, undergo a psychological examination, and attend family counseling. *Walker v. Walker*, 523 A.2d 782, 784 (Pa. Super. 1987).

Recently, this Court relied upon *Walker* to determine whether it could render a decision in a custody appeal involving a child who had turned 18 during the pendency of the appeal. This Court quoted the following from *Walker*:

- 7 -

A "child" is defined in this Commonwealth for domestic relations purposes, including custody proceedings, as "[a]ny unemancipated person under 18 years of age." 23 Pa.C.S.[ ] § 5302 [ (repealed effective Jan. 24, 2011) ]. The trial court's jurisdiction in these proceedings is limited to proceedings involving children. Though appellant functions at a moderate level of retardation, chronologically she was 18 years old at the time the trial court issued its order. Thus, because she was not a child at that time, the trial court was without proper subject matter jurisdiction. While other remedies may be available to the mother, she cannot compel appellant to visit her through this type of action.

*A.R. v. H.P.R.*, 2019 WL 3383598, (Pa. Super. 2019) (unreported memorandum at 3-4)[5] (quoting *Walker*, 523 A.2d at 784)).

Relying upon this passage, the *A.R.* Court concluded that "[b]ecause [the c]hild is now 18 years old, neither [m]other nor [f]ather may be awarded legal or physical custody of [the c]hild pursuant to the Act. … [The c]hild is now free to live with [m]other, [f]ather, or neither parent." *Id.* Accordingly, the Court concluded that the father's appeal was moot and dismissed the appeal. *Id.*

We find *A.R.* to be persuasive as to the definition of child under the Child Custody Act. We observe that in the instant case, O.S. will turn 18 years old in May 2020. Unless circumstances have changed, we presume O.S. will still be in high school past his 18th birthday, as he was only in the tenth grade at the time of the hearings. Nevertheless, his educational status

---

[5] *A.R.* is a non-precedential opinion entered after May 1, 2019. Accordingly, we cite to it for its persuasive value only. *See* Pa.R.A.P. 126(b)(2).

has no bearing upon his parents' ability to exercise legal or physical custody over him pursuant to the Child Custody Act. Other statutes relating to children explicitly provide for the exercise of jurisdiction past the age of 18 when the child remains in school. *See* 42 Pa.C.S. § 6302 (defining a child for purposes of the Juvenile Act as an individual who is under 18 years of age, but also explicitly providing an exception that allows an individual to be considered a child if the individual is under 21 and in school) and 23 Pa.C.S. §§ 4321(2), (3) (mandating liability for child support for all "children who are unemancipated and 18 years of age or younger," and providing for potential liability for "children who are 18 years of age or older"); *see also Blue v. Blue*, 616 A.2d 628, 633 (Pa. 1992) ("Therefore, notwithstanding a child reaching majority at age 18, a parental duty of support is owed until a child reaches 18 or graduates from high school, whichever event occurs later.").

In contrast, the language of the Child Custody Act does not provide an exception to the definition of child for an individual who is 18 and still in high school. The definition of child refers only to the individual's age and emancipation status. *See* 23 Pa.C.S. § 5322 (defining a child as "[a]n unemancipated individual under 18 years of age"). This language is unambiguous, and we must apply the words of the statute in accordance with their plain and obvious meaning. *Commonwealth v. Kirwan*, 221 A.3d 196, 200 (Pa. Super. 2019). Since O.S. will be 18 on his upcoming

- 9 -

birthday, neither this Court nor the trial court will have subject matter jurisdiction over O.S. at that point under the Child Custody Act.

In reviewing Mother's issues, we conclude that all of them are moot because we are unable to provide the relief she seeks with an order that will have legal force or effect. In Mother's first three issues, Mother contends the trial court erred by failing to (1) appoint a GAL for O.S. in the custody matter given his special needs;[6] (2) conduct a proper competency evaluation of O.S.;[7] and (3) order Father to submit to a psychological evaluation.[8] Mother's fourth and fifth issues deal with the trial court's failure to address

_____

[6] In its discussion of this issue, the trial court referred to the appointment of a GAL pursuant to the Juvenile Act, 42 Pa.C.S. §§ 6301-6375. **See** Trial Court Opinion, 11/15/2019, at 11-13. That statute governs dependent children and is inapplicable to the issue of whether the trial court erred by failing to appoint a GAL in a custody matter pursuant to the Child Custody Act. Appointment of a GAL in a custody matter is not mandatory. **See** Pa.R.C.P. 1915.11-2 ("The court **may**, on its own motion or the motion of a party, appoint a [GAL] to represent the best interests of the child in a custody action.") (emphasis added).

[7] We observed that although Mother apparently had challenged O.S.'s competency in the PFA matter, she neither appealed the trial court's determination of competency in the PFA matter nor objected to O.S.'s competency in the custody matter. Moreover, Mother was the one who called O.S. to testify at the September 13, 2019 custody hearing. **See** N.T., 9/13/2019, at 53-55.

[8] Even if issues one through three were not moot, we would not reach the merits of these issues, as Mother has waived them by failing to present them to the trial court in the first instance. **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

- 10 -

her motion for reconsideration, and the court's decision to grant Father's motion for reconsideration without a further hearing.[9]

Even if we were to agree with Mother as to any of these issues, vacate the October 1, 2019 order, and order further proceedings on remand after correction of the alleged procedural defect, the proceedings on remand could not be accomplished by the time O.S. turns 18 years old, rendering our order without legal force or effect. The appellate rules permit the trial court to proceed in accordance with this Court's judgment or other order upon remand of the record, which does not occur until thirty days after entry or the judgment or other order. *See* Pa.R.A.P. 2572, 2591. Therefore, even if we enter a final order in this matter before O.S. turns 18 years old, the trial court will not be able to proceed on remand before it loses subject matter jurisdiction. Therefore, the first five issues are moot.

In her sixth and final issue, Mother contends that the trial court erred by awarding Father sole legal custody in the October 1, 2019 reconsideration

_____

[9] Even if issues four and five were not moot, we would not grant the relief Mother seeks. The court was under no obligation to rule upon Mother's motion for reconsideration and was within its discretion to stand by its original order. *Moore v. Moore*, 634 A.2d 163, 167 (Pa. 1993). In doing so, we discern no bias by the trial court. The comments by the trial court to which Mother directs our attention were all made in the context of the court explaining why it was not going to order O.S. to visit with Mother, and all were related to and supported by examples in the record. *See* N.T., 9/13/2019, at 76-81. Regarding the trial court's decision to grant Father's motion for reconsideration without conducting a further hearing, such decision remains within its discretion. *See Moore*, 634 A.2d at 167-68.

- 11 -

order without considering and articulating the statutorily-mandated factors set forth at 23 Pa.C.S. § 5328(a). Mother's Brief at 15.

Subsection 5328(a) of the Child Custody Act, 23 Pa.C.S. §§ 5321-5340, sets forth sixteen factors and specifies that "[i]n ordering **any** form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child[.]" 23 Pa.C.S. § 5328(a) (emphasis added). Subsection 5323(a) sets forth seven "types of custody" the court may award if the custody type is in "the best interest of the child:" sole, shared, primary, partial, or supervised physical custody, and shared or sole legal custody.[10] 23 Pa.C.S. § 5323(a). This Court has interpreted these statutory provisions to mean that "a trial court must apply the [subsection] 5328(a) factors and issue a written explanation of its decision when it orders any of the seven forms of custody provided for by the Act [at subsection 5323(a)]." *S.W.D. v. S.A.R.*, 96 A.3d 396, 401-02 (Pa. Super. 2014).

The trial court offered the following analysis of this claim in its Rule 1925(a) opinion.

> The trial court was not required to address the custody factors under 23 Pa.C.S. [§] 5328[(a)] when it granted sole legal custody of O.S. [to Father.] The Superior Court has stated that

---

[10] The Child Custody Act defines legal custody as "[t]he right to make major decisions on behalf of the child, including, but not limited to, medical, religious and educational decisions." 23 Pa.C.S. § 5322. Physical custody is "[t]he actual physical possession and control over a child." *Id*.

> when a trial court does not change the underlying custody order, then the factors have not been "implicated directly." **M.O. v. J.T.R.**, 85 A.3d 1058, 1063 [(Pa. Super. 2014)].
>
> Granting Father's motion for reconsideration did not change the underlying custody order entered during the [PFA] hearings. The custody order in this case was not entered in a traditional manner. During the [PFA] hearing, [O.S.], on his own accord, credibly told the trial court about an incident when Mother threatened to kill him. He expressed real fear and was afraid of Mother. Therefore, the trial court entered an order granting Father sole legal and sole physical custody. When this case was addressed in custody court, Father remained as the sole legal custodian only.
>
> The trial court vacated any custody provisions because of [O.S.'s] age and maturity, however when Father expressed concern over obtaining medical care for O.S.[,] the trial court simply reinstated Father's previous status. It was in O.S.'s best interests for Father to be able to obtain medical care for him. No physical custody provisions were modified as a result of our granting Father's motion for reconsideration.

Trial Court Opinion, 11/15/2019, at 10-11 (court designation altered; unnecessary capitalization omitted).

The trial court's reliance upon **M.O.** is misplaced. In that case, this Court held that a trial court is not required to address the 16 statutory factors set forth at subsection 5328(a) when it does not "make an award of custody, but merely modifie[s] a discrete custody-related issue." **M.O.**, 85 A.3d at 1063. In that case, the court only addressed a "discrete and narrow issue ancillary to a materially unchallenged custody arrangement," which was whether the father was required to be off from work while he had custody of the children over summer vacation. **Id.** at 1059-60. This Court concluded that subsection 5328(a) is not "implicated directly" if there is no

change to "the underlying award of custody." ***Id.*** at 1063. Because the trial court did not decide physical or legal custody, or change the amount of custodial time that either party had with the children, its failure to examine the factors was not error. ***Id.***

Conversely, in the instant case, subsection 5328(a) was implicated directly. The trial court claimed it simply reverted back to the PFA order by awarding Father sole legal custody. What the trial court failed to appreciate is that the PFA order was a **temporary** award of sole legal custody to Father. ***See C.H.L.***, 214 A.3d at 1281 ("Custody wise, a PFA order is not designed to impose anything but emergency relief."). While the trial court did not have to analyze the subsection 5328(a) custody factors to make a temporary emergency award of custody pursuant to the PFA Act, ***id.***, it did have to analyze the subsection 5328(a) custody factors to make a non-temporary award of legal custody pursuant to the Child Custody Act, ***S.W.D.***, 96 A.3d at 402.

Father's petition for reconsideration asked the court to institute an order after all custody orders had been vacated, thereby "plac[ing] the issue of [legal] custody before the trial court." ***Id.*** at 406. Having recently decided in September 2019 that no form of custody was in O.S.'s best interest, the trial court now had to decide whether giving Father the right to exercise legal custody was in O.S.'s best interest. This decision "squarely implicat[ed] an award of a form of custody under 23 Pa.C.S.[] § 5323(a),"

- 14 -

and therefore required the trial court "to consider all the [subsection] 5328(a) best interest factors." *Id.*

Because the trial court did not analyze the subsection 5328(a) custody factors when awarding Father legal custody, ordinarily we would vacate the October 1, 2019 order, and "remand for preparation of an opinion that addresses all the [subsection] 5328(a) best interest factors." *Id.* at 407. However, as discussed *supra*, the remand and revised opinion could not be accomplished by O.S.'s 18th birthday. Therefore, any order directing the trial court to do so, even if entered before O.S. turns 18 years old, will have no legal force and effect upon O.S.'s 18th birthday. Accordingly, we conclude that the sixth issue Mother presents is moot.

Based on the foregoing, we dismiss Mother's entire appeal as moot.

Appeal dismissed.

Judge King joins this opinion.

Judge Nichols concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/19/2020

- 15 -