J-A18011-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JACHELINE MOLINA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HENRY VELASQUEZ | : | No. 242 WDA 2021 |

Appeal from the Order Entered January 20, 2021
In the Court of Common Pleas of Allegheny County Family Division at
No(s): FD-16-7919-009

BEFORE: OLSON, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.: **FILED: October 4, 2021**

Appellant, Jacheline Molina, biological mother, ("Mother") appeals from the January 20, 2021 order denying her petition to relocate L.M., a child, born April 2016. We affirm.

The trial court summarized the pertinent factual and procedural history as follows:

> [Mother and Henry Velasquez, biological father, ("Father")] are the parents of [L.M.] The parties were never married. On May 3, 2016, Father filed a complaint to establish paternity of the child. On March 28, 2017, Father filed a complaint for shared physical and shared legal custody of [L.M.] On June 21, 2017, the parties agreed to a consent order for custody providing: the parties share legal custody, Mother has primary physical custody, and Father has partial physical custody of [L.M.] on a step[-]up schedule ending ultimately with every Tuesday [from 3:00 p.m.] until [10:00 p.m.], every Saturday [from 8:00 a.m.] until [5:00 p.m.], and every other [weekend from 5:00 p.m. on Saturday] until [5:00 p.m. on Sunday.] This arrangement was never modified [by the trial court] but testimony at the October 26, 202[0]

hearing established the *status quo* as the child being with Father every other Friday to Saturday and every other Friday to Sunday.

On May 12, 2020, Mother filed a notice of proposed relocation to [] Virginia.[1]  On June 30, 2020, Father filed a counter-affidavit in which he opposed Mother's relocation.  On August 9, 2020, [the trial] court entered an order after a conciliation for the parties to continue following the June 21, 2017 consent order for custody, and on August 21, 2020, entered an order scheduling a trial to address Mother's proposed relocation[.]  The hearing was held on [October 26, 2020], after which [the trial] court entered the January [20], 2021 order denying Mother's [proposed] relocation.

Trial Court Opinion, 3/19/21, at 1-2 (extraneous capitalization and record citation omitted).  This appeal followed.[2]

Mother raises the following issues for our review:

1.    Did the [trial] court commit a gross abuse of discretion [or] error of law in denying the [proposed] relocation when the facts of record do not support a determination that the proposed relocation is not in the best interest of the minor child pursuant to 23 Pa.C.S.A. § 5337(h), *et seq.*?

2.    Did the [trial] court commit a gross abuse of discretion [or] error of law in denying the [proposed] relocation when the facts of record do not support a determination that the nature, quality, extent of involvement[,] and duration of the child's relationship with the party proposing to relocate and with the non-relocating party, siblings and other significant persons in the child's life are such to disallow the relocation pursuant to 23 Pa.C.S.A. § 5337(h)(1)?

3.    Did the [trial] court commit a gross abuse of discretion [or] error of law when the facts of record do not support a determination that the age, development state, needs of the child[,] and the likely impact the [proposed] relocation will

_____

[1] At the time Mother filed her petition for relocation, both Mother and Father resided in Allegheny County, Pennsylvania.

[2] Both Mother and the trial court complied with Pa.R.A.P. 1925.

have on the child's physical [and] educational development, taking into consideration any special needs of the child, are such to disallow the relocation pursuant to 23 Pa.C.S.A. § 5337(h)(2)?

4. Did the [trial] court commit a gross abuse of discretion [or] error of law when the facts of record do not support a determination that preserving the relationship between the non-relocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties, is not feasible for the parties pursuant to 23 Pa.C.S.A. § 5337(h)(3)?

5. Did the [trial] court commit a gross abuse of discretion [or] error of law when the facts of record do not support a determination that the [proposed] relocation will not enhance the general quality of life of the party seeking the relocation, including but not limited to, financial or emotional benefit or educational opportunity pursuant to 23 Pa.C.S.A. § 5337(h)(6)?

6. Did the [trial] court commit a gross abuse of discretion [or] error of law when the facts of record do not support a determination that the [proposed] relocation will not enhance the general quality of life of the child, including but not limited to[,] financial or emotional benefit or educational opportunity pursuant to 23 Pa.C.S.A. § 5337(h)(7)?

7. Did the [trial] court commit a gross abuse of discretion [or] error of law when it determined the [proposed] relocation would not be in the best interest of the child, and in doing so, failed to address Father's ulterior motives for opposing the [proposed] relocation pursuant to 23 Pa.C.S.A. § 5337(h)(8)?

Mother's Brief at 2-4 (extraneous capitalization omitted).

In sum, Mother's issues challenge the trial court's order denying her petition for relocation and the related request to modify the custody order, set

forth therein.[3]   Our scope and standard of review of such custody determinations are well-settled.

> Our scope [of review] is of the broadest type and our standard [or review] is abuse of discretion.  This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations.  In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial [court that] presided over the proceedings and[,] thus[,] viewed the witnesses [firsthand].  However, we are not bound by the trial court's deductions or inferences from its factual findings.  Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record.  We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.
>
> *E.D. v. M.P.*, 33 A.3d 73, 76 (Pa. Super. 2011) (citation omitted).  With any child custody case, this Court has long stated that the paramount concern is the best interests of the child.  *Landis v. Landis*, 869 A.2d 1003, 1011 (Pa. Super. 2005).  This standard requires a case-by-case assessment of all [] the factors that may legitimately affect the "physical, intellectual, moral[,] and spiritual well-being" of the child.  *Id.*  When a custody dispute involves a request by a party to relocate, we have explained, "there is no

---

[3] As part of her petition for relocation, Mother proposed changing the custody order as follows:

> I want primary custody.  I want to take turns every weekend and [the] same with holidays.  On [L.M.'s] birthday[,] I want to take turns [with L.M. spending] one [birthday] with [Father] and [the] next year['s birthday] with [Mother.  I would like the same schedule with regard to] Thanksgiving, Christmas[,] and New Year's.  At the end of the school year[, L.M.] can spend [one week, Sunday to Sunday[,] with [Father] and [the following week,] Sunday to Sunday[,] with [Mother].

Mother's Notice of Proposed Relocation, 5/12/20, at ¶8.

black[-]letter formula that easily resolves relocation disputes[. R]ather, custody disputes are delicate issues that must be handled on a case-by-case basis." ***Baldwin v. Baldwin***, 710 A.2d 610, 614 (Pa. Super. 1998).

***C.M.K. v. K.E.M.***, 45 A.3d 417, 421 (Pa. Super. 2012) (original brackets omitted).

Section 5337(h) of the Pennsylvania Domestic Relations Code, 23 Pa.C.S.A. §§ 5321-5340, sets forth the factors that a trial court must consider, "giving weighted consideration to those factors which affect the safety of the child[,]" in determining whether to grant, or deny, a petition for proposed relocation. 23 Pa.C.S.A. § 5337(h). Those factors are as follows:

(1) The nature, quality, extent of involvement[,] and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings[,] and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child[,] and the likely impact the relocation will have on the child's physical, educational[,] and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

*Id.* at § 5337(h)(1-10). "The party proposing the relocation has the burden of establishing that the relocation will serve the best interest of the child as shown under the factors set forth in" Section 5337(h). *Id.* at § 5337(i)(1). "Each party has the burden of establishing the integrity of that party's motives in either seeking the relocation or seeking to prevent the relocation." *Id.* at § 5337(i)(2).

Here, Mother argues that the trial court erred as a matter of law and abused its discretion in considering the factors enumerated under Section 5337(h). Mother's Brief at 10-15. Specifically, Mother contends that the trial court abused its discretion in considering the Section 5337(h) factors 1, 2, 3, 6, 7, and 8. *Id.* at 15-23. In sum, Mother asserts that,

L.M. spends a majority of his time with Mother, who teaches him fundamentals; L.M. only spends partial weekends with Father, [his] step-mother[,] and [a] half-sibling []; L.M. has no relationships in Pittsburgh outside of his maternal and paternal homes; Mother proposed a suitable custody arrangement that

would largely preserve Father's time with L.M.;[4] there is uncontroverted testimony that Father allows L.M. to call [Father's] wife "mom"; it is uncontroverted that Mother - and by extension, L.M. - would benefit emotionally from being able to be with [his] step-father more frequently, as it would reduce stress and arguments;[5] the relocation would provide better economic opportunities for Mother - and by extension L.M. - by reducing cost of travel for her family;[6] there is no evidence of abuse towards L.M. by either party; and, most notably, Mother's reasons for the relocation are pure, while Father's [reasons for opposing the relocation] are extremely questionable.

*Id.* at 11 (extraneous capitalization and record citations omitted).

Father asserts that "the only interest [Mother] seeks is to be with her husband, which cannot be denied, but is not in the best interest of [L.M.]" Father's Brief at 2.[7] Father contends that if relocation were permitted, he

_____

[4] Mother explains that under her proposed relocation custody schedule, Father would have 78 overnight visits with L.M. annually, excluding holiday visits, as compared to the 72 overnight visits annually, excluding holiday visits, Father receives under the custody arrangement currently in place. Mother's Brief at 19.

[5] Mother asserts that the proposed relocation custody arrangement would ease the financial burden on her family and reduce the arguing and stress between Mother and L.M.'s stepfather that exists because the couple are currently maintaining a long-distance relationship between Allegheny County, Pennsylvania and Virginia. Mother's Brief at 14.

[6] Mother contends the proposed relocation custody arrangement would reduce her family's travel expenses by $8,600.00 per year because L.M.'s stepfather would no longer need to travel to Allegheny County each weekend to see Mother and L.M. Mother's Brief at 19.

[7] At the time Father submitted his *pro se* brief to this Court on May 13, 2021, the brief was written in Spanish. Although our appellate rules do not currently set forth a rule requiring a brief to be submitted in English, *sua sponte*, this Court engaged the services of the translator used during the relocation

would "miss important events in [L.M.'s] life during the school year, such as extracurricular and sports activities." *Id.* at 3. Father argues that L.M. does not have a "very strong relationship" with Mother's husband or his children and that the plan, prior to Mother's relocation efforts, was for L.M. to attend school in Father's school district. *Id.* at 2-3. Father contends that the proposed relocation would "prevent [Father] from spending more time with [L.M.] and it would be more tiresome for [L.M.]" to travel the increased distance to spend time with Father. *Id.* at 3.

In considering the factors enumerated in Section 5337(h), the trial court stated,

> **(1) The nature, quality, extent of involvement[,] and duration of the child's relationship with the party proposing to relocate and with the non-relocating party, siblings[,] and other significant persons in the child's life.**
>
> Regarding Mother, the party proposing to relocate, the testimony established the following: Mother performs all the expected parental duties when the child is with her; Mother maintains a loving, consistent, and nurturing relationship with the child; when the child is with Mother, she attends to his daily physical, emotional, and educational development.
>
> Regarding Father, the non-relocating party, the testimony at trial established the following: Father performs all the expected parental duties when the child is with him; Father maintains a

---

hearing for the purpose of translating Father's brief into English. In an August 25, 2021 *per curiam* order, this Court explained its translation efforts to the parties, provided the parties with a copy of Father's brief in Spanish and a copy of the brief translated into English, and directed the parties to file any objections to the English translation of Father's brief within 14 days of said order. No objections were filed. Therefore, we rely upon, and cite to, the English translation of Father's brief for our review.

loving, stable, consistent, and paternal relationship with the child; when the child[] is with Father, he attends to his daily physical, emotional, and educational development.

Additionally, the child has a strong bond with his maternal grandmother, stepmother, paternal sibling, and extended maternal and paternal family members in Allegheny County[, Pennsylvania].

**(2) The age, development state, needs of the child[,] and the likely impact the relocation will have on the child's physical, educational[,] and emotional development, taking into consideration any special needs of the child.**

The testimony and evidence at trial established the following: [the child] is [four] years old; the child is [] well-adjusted; the child is appropriately developed physically, educationally, and emotionally; and, due to the fact Father would not be able to be as present and involved in the [child's life] as he has been, the relocation would have an adverse impact on the child's physical, educational, and emotional development.

Considering the above, the evidence supports Father's position that the relocation would have an adverse impact on the physical, educational, and emotional development of the [child].

**(3) The feasibility of preserving the relationship between the non-relocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.**

Mother's proposed relocation arrangements are likely to adversely affect the child's relationship with Father. For approximately three[-]quarters of the [four]-year-old child's life, Father has been present, involved, and vested in his life.[8] Mother's proposed custody arrangements are for Father to have custody of the child

---

[8] The record demonstrates that shortly after L.M.'s birth, Father filed a complaint to establish paternity. **See** Father's Complaint to Establish Paternity and for Genetic Test, 5/3/16. Approximately one year after L.M.'s birth, and upon receiving confirmation of paternity, Father filed a complaint for custody. **See** Father's Complaint for Custody, 3/28/17.

every other weekend during [the] school [year] and [alternating weeks] in the summer.

Based on the [proposed relocation], and considering the distance between [Virginia] and [Allegheny County, Pennsylvania,] it is not reasonable to think that the child would travel back and forth every other weekend during the school year. Furthermore, during most of the school year, Father would not be able to participate in any school activities [or extracurricular activities,] and the child would not get to have Father participate in his day[-]to[-]day life during the school year. Considering the bond and relationship the child has with his Father, it would be difficult to preserve that relationship following Mother's [proposed relocation]. Finally, it is not feasible to think that[,] in the long term[,] the child will travel back and forth between [Virginia] and [Allegheny County, Pennsylvania] every week making it difficult to preserve Father's relationship with the child.

**(4) The child's preference, taking into consideration the age and maturity of the child.**

The child is [not] of an [appropriate] age to be interviewed by the [trial] court[,] and the parties did not request the [trial] court interview the child.

**(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.**

Neither party presented evidence at trial that established a pattern of conduct by either party to promote or thwart the relationship of the [child] and the other party.

**(6) Whether the relocation will enhance the general quality of life of the party seeking the relocation, including but not limited to, financial or emotional benefit or educational opportunity.**

Mother testified that the relocation would enhance her general quality of life [both] financially and emotionally. Specifically, Mother [] recently married [L.M.'s stepfather] who lives in [Virginia] where Mother proposes to relocate[.] Mother testified that [relocation] would benefit her financially and emotionally. Relocating to Virginia may enhance Mother's quality of life emotionally and financially, but the adverse effect the proposed relocation will have on the child's relationship with Father

outweighs the possibility that Mother's life will be enhanced emotionally and financially.

**(7) Whether the relocation will enhance the general quality of life for the child, including but not limited to financial or emotional benefit or educational opportunity.**

The evidence presented at trial did not establish that the relocation would enhance the child's general quality of life, including but not limited to, financially, emotionally, [or] academically. In fact, based on what has been stated in factors 1 through 5 [herein], the evidence established that the relocation would likely have an adverse impact on the [child's] quality of life.

**(8) The reasons and the motivation of each party for seeking or opposing the relocation.**

The testimony at trial established that Mother's motivation for seeking the relocation was based on her husband being from [Virginia]. Furthermore, the testimony and evidence established that Father opposed the relocation for the following reasons: it would be in the child's best interest to remain in [Allegheny County, Pennsylvania] based on the fact that he is well-adjusted, has strong family and friend bonds, and would be adversely impacted by not having his Father present in his life on a regular basis during the school year and ultimately throughout the year.

**(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or the abused party.**

Father raised concern that Mother's stepfather had been abusive toward her in the past. Father did not present any evidence to corroborate this allegation. There was no evidence presented that there is a continued risk of harm to the child.

**(10) Any other factor affecting the best interest of the child.**

There are no other factors affecting the best interest of the child that were addressed at trial.

Trial Court Opinion, 1/20/21, at 3-7 (extraneous capitalization and original formatting omitted).

The record demonstrates that Mother and Father both currently reside in Allegheny County, Pennsylvania. N.T., 10/26/21, at 7, 38. Mother works part-time from her home in Allegheny County for her husband's construction company, which does business in Virginia. *Id.* at 9. Father is self-employed with his own construction company. *Id.* at 81. Mother currently lives with her mother, stepfather, and brother, and has primary physical custody of L.M., who has a strong bond with the family members in Mother's household. *Id.* at 10, 18. Father currently lives with L.M.'s stepmother and Father's other child, L.M.'s half-sibling, as well as L.M. when he is in Father's custody. *Id.* at 41. L.M. has a strong bond with the family members in Father's household, as well as with Father's sister and her family, who reside several blocks from Father's house, and with members of Father's church. *Id.* at 41, 74. Mother's husband, L.M.'s stepfather, resides in Virginia with his two children, and visits Mother primarily on weekends during times when L.M. is in Father's custody. *Id.* at 8-9. Mother does not drive, so L.M.'s stepfather drives the approximate eight hours, round trip, between Virginia and Allegheny County, Pennsylvania when he visits with Mother.[9] *Id.* at 14, 30, 81. Father resides approximately 20 minutes driving-time from where L.M. resides currently with Mother. *Id.* at 45.

_____

[9] We note that the trial court incorrectly attributed the travel time between Virginia and Allegheny County, Pennsylvania to be eight hours one direction. *See* Trial Court Opinion, 3/19/21, at 8; *see also* N.T., 10/26/20, at 14 (stating that the time necessary to travel **back and forth** between Allegheny County, Pennsylvania and Virginia was eight hours).

Mother testified that living apart from her husband, and his two biological children, was difficult and left her feeling incomplete as a stable family unit. *Id.* at 9. Mother stated that the long-distance living arrangement was stressful because she and her husband were not living together, and this led to arguments between them during telephone conversations. *Id.* at 10. If relocation were permitted, Mother planned to enroll L.M. in a pre-kindergarten program and involve him in local community activities in Virginia. *Id.* at 14. Mother expressed that the relocation would still permit Father to have periodic custody of L.M. because Mother was willing to travel to facilitate the visitations and Father could communicate with L.M. *via* the telephone. *Id.* at 14.

Father expressed concern that if the relocation were permitted, he would be unable to participate in L.M.'s daily life, especially in L.M.'s educational activities and any extracurricular activities. *Id.* at 44, 48. Father also stated that a permitted relocation would require him to drive further and, at times, in inclement weather, to facilitate the custodial exchange. *Id.* at 44-46. Father testified that L.M. has a strong relationship with Father, as well as his stepmother, his half-sibling, and Father's extended family, and is actively involved in Father's church. *Id.* at 41, 66-68, 74.

The record supports the trial court's analysis and consideration of the ten factors enumerated in Section 5337(h). We discern no abuse of discretion or error of law in the trial court's conclusion that Mother failed to satisfy her burden of demonstrating that relocation is the in best interest of L.M. under

the Section 5337(h) factors, and the trial court's determination is supported by the evidence of record. While L.M.'s relocation would seemingly improve Mother's quality of life with her husband and his children and would help decrease Mother's financial obligations by reducing travel expenses,[10] the relocation would not present a financial or emotional benefit or an educational opportunity to L.M. that he does not already have in Allegheny County, Pennsylvania. Rather, L.M.'s existing bonds, and the ability to maintain those bonds, with his family and friends in Allegheny County, Pennsylvania would be diminished given the long distance. Specifically, the relocation would strain L.M.'s relationship and reduce the consistency of his involvement with Father, who, due to the long distance, would be limited in his interaction with L.M. including participation in school or extracurricular activities. Furthermore, the relocation would result in L.M. having to travel long distances to facilitate the custody exchange and would take L.M. away from time with family and friends or the benefits of school or extracurricular activities. Therefore, we discern no abuse of discretion or error of law in the trial court's denial of Mother's petition for relocation.[11]

---

[10] Mother's travel expenses would not be eliminated *in toto* because Mother would still incur travel expenses to facilitate the long-distance custody schedule called for in her proposed relocation petition.

[11] This Court in **A.M.S. v. M.R.C.**, 70 A.3d 830 (Pa. Super. 2013) held that when a trial court is tasked with deciding issues of **both** relocation **and** custody of the child, the trial court must consider the 10 factors set forth in Section 5337(h), as well as the 16 factors enumerated in 23 Pa.C.S.A.

Order affirmed.

_____

§ 5328(a). **A.M.S.**, 70 A.3d at 836. To the extent the trial court failed to consider the Section 5328(a) factors in the case *sub judice*, Mother waived this challenge by failing to raise the issue in the trial court. **See** Pa.R.A.P. 302(a) (stating that, "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal"). Moreover, unlike the circumstances in **A.M.S.**, which involved both a petition for relocation and a petition for custody, the case *sub judice* involves only a petition requesting relocation, which, if granted, implicitly would require a modification of custody. Here, a review of the January 20, 2021 custody order, in which the trial court denied Mother's petition for relocation, demonstrates that the trial court did not modify the physical and legal custody previously ordered or alter the custodial arrangement presently observed by both parties. **See M.B.S. v. W.E.**, 232 A.3d 922, 930 (Pa. Super. 2020) (stating that "because the trial court did not decide physical or legal custody, or change the amount of custodial time that either party had with the children, its failure to examine the [Section 5328(a)] factors was not error"). The January 20, 2021 custody order simply reduced to a judicial order the custodial practices presently employed by both parties and maintained the "*status quo*" of the custodial relationship. **Compare** Trial Court Order, 6/22/17 **with** Trial Court Order, 1/20/21; *see also* N.T., 10/26/20, at 82 (setting forth Mother's request that if relocation is not granted then the trial court should "maintain the *status quo*" of the custody arrangement). Therefore, consideration of the Section 5328(a) factors was unnecessary in the instant case. **See E.D.**, 33 A.3d at 82 n.6 (stating, "[i]n accordance with proper practice under [S]ection 5337, where the nonrelocating party merely objects to modification of the existing custody order in his[, or her, response to the petition for relocation], the trial court will not perform a best interests of the child analysis pursuant to the [S]ection 5328(a) factors, but will instead decide whether the existing custody order should be modified pursuant to the section 5337(h) factors").

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/4/2021</u>