J-A06034-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| HOWARD HANNA D/B/A HOWARD HANNA REAL ESTATE SERVICES | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 967 WDA 2021 |
| MICHAEL HORNUNG, AN INDIVIDUAL; JENNIFER CROUSE, AN INDIVIDUAL; LEAH GEORGE, AN INDIVIDUAL; COMPASS, INC. F/K/A URBAN COMPASS, INC., A DELAWARE CORPORATION AND COMPASS PENNSYLVANIA, LLC, A DELAWARE LIMITED LIABILITY COMPANY | : : : : : : : : : | |

Appeal from the Order Entered August 6, 2021
In the Court of Common Pleas of Allegheny County
Civil Division at GD 21-001894

BEFORE:   MURRAY, J., SULLIVAN, J., and COLINS, J.*

MEMORANDUM BY MURRAY, J.:                         **FILED: JUNE 23, 2022**

Howard Hanna, d/b/a Howard Hanna Real Estate Services (Appellant), appeals from the order denying its motion for a preliminary injunction to enforce the non-compete clauses in contracts with former sales associates

---

* Retired Senior Judge assigned to the Superior Court.

Jennifer Crouse (Crouse) and Leah George (collectively, Defendants).[1] Upon review, we reverse and remand for further proceedings.

Appellant provides comprehensive real estate services and is one of the ten largest real estate brokerage companies in the country. Defendants worked for Howard Hanna as self-employed independent contractors. On June 29, 2015, Appellant and Crouse executed an Agreement Between Broker and Sales Associate (Crouse Agreement). In relevant part, the Crouse Agreement included a restrictive covenant not to compete (the non-compete clause):

> **During the term of this Agreement and for a period of eight (8) months thereafter**, Sales Associate shall not, directly or indirectly, acting alone or in conjunction with others: (1) **list or sell real estate in which said real estate is located within a five (5) mile radius around any of Broker's branch offices in which Sales Associate worked during the term of this Agreement**; (2) furnish to any person, partnership or corporation or any other entity engaged in any business that is in competition with any business then being conducted by Broker, any information regarding Broker's clients, customers' properties, prices, terms of negotiations, policies or relationships with clients and customers, nor any other information and all materials supplied by Broker to Sales Associate, including but not limited to, publications, cards, records, and any other material files or data; (3) solicit, either directly or indirectly, any listing or buyers brokerage contract held by Broker at the time of termination of this Agreement; and (4) solicit, either directly or indirectly, any personnel or other Sales Associate or other persons associated with Broker to terminate their relationships with Broker. It is expressly agreed that the aforementioned records and information are the sole property of the Broker.

---

[1] "An appeal may be taken as of right … from … [a]n order that grants or denies, modifies or refuses to modify, continues or refuses to continue, or dissolves or refuses to dissolve an injunction[.]" Pa.R.A.P. 311(a)(4).

Amended Complaint, Exhibit B, ¶ 10 (emphasis added). On October 9, 2015, Appellant and George executed a substantively identical agreement (George Agreement), which included a six-month restriction on competitive activities. Amended Complaint, Exhibit C, ¶ 5.

The trial court described the events that ensued as follows:

On March 2, 2021, Crouse submitted oral and written notice of her resignation to [Appellant]. Crouse thereafter joined Compass Pennsylvania, LLC ("Compass") [another real estate company]. According to [Appellant], Crouse has since attempted to transfer certain listings over to Compass in violation of the Crouse [Agreement]. Crouse contends that she does not remember ever signing the Crouse [] Agreement.

* * *

On March 4, 2021, George emailed notice of her resignation to [Appellant's] Chief Executive Officer, Chairman, and Senior Executive. George thereafter joined Compass. According to [Appellant], George has since refused to submit offers on various listings with [Appellant] so that she could submit those offers with Compass. Additionally, [Appellant] asserts that George solicited other sales associates or persons associated with [Appellant] when George sent an email regarding the benefits of working at Compass. George contends that she was never aware of the restrictive covenants in the George [Agreement] and [Appellant] never discussed or advised her regarding the restrictive covenants.

Trial Court Opinion, 10/25/21, at 1-2.

On March 5, 2021, Appellant filed a complaint against another former sales associate, Michael Hornung, alleging breach of a non-compete clause as well as misappropriation of trade secrets. Appellant additionally named Compass and an affiliate, Compass, LLC, as defendants. Appellant filed a

motion for preliminary injunction against Hornung and the Compass defendants which was resolved by consent order.

On March 23, 2021, Appellant filed a first amended complaint against Defendants, claiming Defendants violated the non-compete clauses in their respective Agreements. On March 28, 2021, Appellant filed a motion for preliminary injunction based on the alleged violations. After a hearing, the trial court denied relief. Trial Court Order, 8/6/21. Appellant timely appealed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for review:

Whether the [trial] court erred in its August 6, 2021, Order of Court, as explained in its October 25, 2021, Opinion:

a. By ignoring the relevant Pennsylvania law that a breach of a restrictive covenant coupled with evidence of some damages constitutes irreparable harm; and

b. In holding that greater injury would occur from refusing to grant the injunction than from granting it and in performing a flawed test for balancing of the potential harms[?]

Appellant's Brief at 4.

Prior to addressing Appellant's issues, we consider Defendants' claim that this appeal is moot because Crouse's eight-month restriction expired on November 2, 2021, and George's six-month restriction expired on September 4, 2021.[2] Defendants' Brief at 16, 17-18.

---

[2] "We may address mootness *sua sponte*, as we generally cannot decide moot

We recognize:

An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an intervening change in the applicable law[.] In that case, an opinion of this Court is rendered advisory in nature. An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.

\* \* \*

Nevertheless, this Court will decide questions that otherwise have been rendered moot when one or more of the following exceptions to the mootness doctrine apply: 1) the case involves a question of great public importance, 2) the question presented is capable of repetition and apt to elude appellate review, or 3) a party to the controversy will suffer some detriment due to the decision of the trial court.

*Lico, Inc. v. Dougal*, 216 A.3d 1129, 1132 (Pa. Super. 2019) (citation omitted).

We agree Appellant's challenge to the trial court's denial of injunctive relief appears moot, as the dates set forth in Defendants' non-compete clauses have passed. Any ruling this Court could enter would lack legal force or effect with respect to Defendants. *See id.* (concluding appeal from denial of preliminary injunction to enforce non-compete agreement was moot because

---

or abstract questions, nor can we enter a judgment or decree to which effect cannot be given." *M.B.S. v. W.E.*, 232 A.3d 922, 927 (Pa. Super. 2020) (quotation marks and citations omitted).

agreement had expired).[3] However, we must consider whether this case presents an exception to the mootness doctrine.

Appellant claims its issues are capable of repetition and likely to evade judicial review because Appellant has hundreds of agreements with sales associates who are bound by non-compete clauses of short duration. Appellant's Brief at 8-11. Appellant further emphasizes that Compass continues to actively recruit Appellant's agents. *Id.* Upon review, we agree that the parties' dispute is capable of repetition.

First, similar disputes are likely to arise in the future. Testimony presented at the injunction hearing confirms Appellant has entered into hundreds of agreements with sales associates who are bound by non-compete clauses of limited duration, and each year, many of Appellant's sales associates leave to join a competitor. *See* N.T., 6/17/21, at 94-98. Future disputes are likely to evade judicial review given the short duration of the sales associates' non-compete term. It is doubtful that litigation would resolve prior to the non-compete term's expiration. *See Public Defender's Office of Venango County v. Venango County Court of Common Pleas*, 893

_____

[3] Appellant argues the issues are not moot because a court sitting in equity may extend the terms of an agreement to prevent injustice to the non-breaching party. However, the cases Appellant cites in support of this argument involve contracts outside of this context. *See Erkess v. Eisenthal*, 47 A.2d 154 (Pa. 1946) (agreement to sell real estate); *Levin v. Pittsburgh United Corp.*, 199 A. 332 (Pa. 1938) (shareholder agreement); *Bloshinski v. Falaz*, 79 A.2d 798 (Pa. Super. 1951) (agreement to sell real estate).

A.2d 1275, 1280 (Pa. 2006) (issue of whether trial court has authority to appoint public defender as counsel for non-indigent defendant was capable of repetition and likely to evade judicial review, as criminal defendants must be tried within 365 days of the filing of a criminal complaint); *cf. Lico*, 216 A.3d at 1132 (concluding issue was not capable of repetition and apt to evade judicial review, as case involved "non-compete agreement in the contract of a single former employee" and question of enforceability of clause between employer and employee would not reoccur). Because this case presents an exception to the mootness doctrine, we consider Appellant's claims.

This Court reviews a trial court's denial of a motion for preliminary injunction for an abuse of discretion. *Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.*, 828 A.2d 995, 1000 (Pa. 2003); *Eckman v. Erie Ins. Exch*, 21 A.3d 1203, 1206 (Pa. Super. 2011). Our review is highly deferential to the trial court. *Pittsburgh Logistics Sys., Inc. v. Beemac Trucking, LLC*, 249 A.3d 918, 923 (Pa. 2021).

> [W]e do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below. Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the trial court.

*Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.*, 828 A.2d 995, 1000 (Pa. 2003) (citation brackets omitted). Our scope of review is plenary. *Porter v. Chevron Appalachia, LLC*, 204 A.3d 411, 416 (Pa. Super. 2019).

A petitioner seeking a preliminary injunction must establish six prerequisites; failure to establish any one of them results in the denial of relief:

> [A] petitioner must establish that: (1) relief is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by money damages; (2) greater injury will occur from refusing to grant the injunction than from granting it; (3) the injunction will restore the parties to their status quo as it existed before the alleged wrongful conduct; (4) the petitioner is likely to prevail on the merits; (5) the injunction is reasonably suited to abate the offending activity; and (6) the public interest will not be harmed if the injunction is granted.

*Id.* (citation omitted)).

Appellant first disputes the trial court's determination that Appellant did not suffer irreparable harm because Appellant "lost only a small amount of identifiable commissions on home sales." Appellant's Brief at 26. Appellant relies on Pennsylvania case law holding that breach of a restrictive covenant, coupled with evidence of damages, constitutes irreparable harm. *Id.* at 22. According to Appellant, "even a small amount of monetary harm signals a bigger problem. A minor breach often portends a large deluge." *Id.* Appellant posits:

> Fearing no consequences, other like-minded individuals soon begin to breach their restrictive covenants. In addition, the competitor's market standing, goodwill, clientele and brand are increased at the cost of the former employer….
>
> * * *
>
> It is not the initial breach of a covenant which necessarily establishes the existence of irreparable harm but rather the threat of the unbridled continuation of the violation and resultant

- 8 -

incalculable damage to the former employer's business that constitutes the justification for equitable intervention. ***Bryant***, 369 A.2d at 1167 …. Indeed, equitable relief is almost always necessary in these cases. ***Records Center***[***, Inc. v. Comprehensive Management, Inc.***,] 525 A.2d [433,] 436 [(Pa. 1987)].

Appellant's Brief at 23-24 (emphasis omitted).

Appellant claims Crouse violated her non-compete clause by listing at least eight homes for Compass within the eight month and five-mile restriction, totaling over $3,900,000. ***Id.*** at 27-28. George, within three months of resigning, listed several properties with Compass within the restricted area. ***Id.*** at 28. Appellant asserts Defendants "provided no indication that they would respect their restrictive covenants, and in fact, believe they can work without restrictions." ***Id.*** Appellant stresses it suffered "actual harm as well as potential harm that entitles [Appellant] to injunctive relief." ***Id.***

Appellant also disputes the trial court's pronouncement that "clients and client loyalty at issue belonged to **Defendants** as self-employed independent contractors[.]" ***Id.*** at 29-30 (emphasis added). According to Appellant, real estate listings are the property of licensed brokers, and not sales associates. ***Id.*** at 30 (citing 63 P.S. § 455.101, *et seq.*; 49 Pa. Code § 35.201 *et seq.*). Appellant argues the Crouse Agreement and George Agreement expressly confirm that Defendants were to engage in real estate business *on behalf of Appellant*, and Appellant owned all listings. Appellant's Brief at 30-31.

- 9 -

After careful review of the record, we disagree with the trial court's conclusion that the limited damages sustained by Appellant controls the determination of irreparable harm. In ***John G. Bryant, Co. v. Sling Testing & Repair, Inc.***, 369 A.2d 1165 (Pa. 1977), the Pennsylvania Supreme Court upheld the issuance of a preliminary injunction where an employer established $427.00 in damages. ***Id.*** at 1167. The Supreme Court rejected the appellants' claim that "meager" damages failed to establish irreparable harm, explaining:

> [Appellants'] reasoning … ignores the nature of the violation herein involved. **It is not the initial breach of a covenant which necessarily establishes the existence of irreparable harm, but rather the threat of the unbridled continuation of the violation and the resultant incalculable damage to the former employer's business that constitutes the justification for equitable intervention**. … The covenant seeks to prevent more than just the sales that might result by the prohibited contact but also the covenant is designed to prevent a disturbance in the relationship that has been established between appellees and their accounts through prior dealings. **It is the possible consequences of this unwarranted interference with customer relationships that is unascertainable and not capable of being fully compensated by money damages.**

***Id.*** (emphasis added).

Here, the evidence established that Crouse repeatedly violated the non-compete clause by listing properties within the prohibited area. ***See*** N.T., 6/3/21, Exhibit 4 (detailing Crouse's multiple listings within the prohibited time frame and geographic area). Significantly, Crouse admitted that repeat business is the "lifeblood" of her profession. ***Id.*** at 94. George likewise violated the non-compete clause by listing properties within the restricted

area. ***See id.***, Exhibit 8. The trial court ignored this evidence and "the threat of the unbridled continuation of the violation and the resultant incalculable damage to [Appellant's] business" caused by Defendants' continuous violations. ***John G. Bryant***, 369 A.2d at 1167.

While Appellant identifies specific properties Defendants listed in violation of the non-compete clauses, there remains a more nebulous calculation of how Defendants' violations harmed Appellant's market advantages and future business opportunities. In an industry dependent on referrals and repeat business, it is difficult to quantify Appellant's loss. The *nature* of the loss, by definition, renders it irreparable. ***See Sheridan Broad. Networks, Inc. v. NBN Broad., Inc.***, 693 A.2d 989, 995 (Pa. Super. 1997) ("In the commercial context, the impending loss of business opportunities or market advantages may aptly be characterized as irreparable injury for this purpose."). Consequently, we discern no apparently reasonable grounds for the trial court's denial of a preliminary injunction on this basis. ***See Summit Towne Centre***, 828 A.2d at 1000.

In its second issue, Appellant claims the trial court erred by determining that greater injury would occur from granting a preliminary injunction than denying it. Appellant's Brief at 35. Appellant argues the trial court improperly applied a "comparative injury" standard when finding greater injury would accrue to Defendants. ***Id.*** at 35-36. Appellant asserts the trial court improperly focused on economic damages when the court opined:

> At most, denying [Appellant's] request for injunctive relief will cause [Appellant] to lose specific commissions it otherwise might have obtained from Defendants. Nonetheless, … any of [Appellant's] alleged lost commissions could be adequately compensated by monetary damages should [Appellant] ultimately prevail in this lawsuit. Accordingly, in comparing the possible financial harms that an injunction would likely cause to Defendants and their families with that of [Appellant's] alleged lost commissions, this Court concluded that [Appellant] also failed to establish the second essential prerequisite necessary for obtaining injunctive relief. The balance of harms weighs in favor of denying [Appellant's] request for injunctive relief.

Appellant's Brief at 36 (citation omitted).

Appellant argues the trial court improperly "pitted the relative financial conditions of a company against individuals, creating a standard that could rarely, if ever, be satisfied." *Id.* at 43. Appellant asserts, "comparing the relative financial condition of individuals against whom an injunction is sought is not part of the balancing test to be performed by the [c]ourt." *Id.* We agree.

In determining whether greater harm would result from enforcing the non-compete clause, we "balance the employer's protectible interests against the employee's interests in earning a living in his chosen occupation and the public interest." ***AmQuip Crane Rental, LLC v. Crane & Rig Servs., LLC***, 199 A.3d 904, 917 (Pa. Super. 2019). In ***AmQuip***, former employees of AmQuip Crane Rental (AmQuip) appealed a preliminary injunction enforcing a restrictive covenant favoring AmQuip. *Id.* at 907. In determining whether greater harm would result from granting the preliminary injunction, this Court reasoned:

- 12 -

> The [former employees] insist that any difficulties incurred by AmQuip are miniscule compared to the difficulty that the [i]ndividuals will face in finding new employment after working in the crane industry for decades. Nevertheless, [the former employees] brought this problem on themselves by breaching their noncompetition covenants. To accept the [former employees'] argument would be to frustrate large employers who have substantial interests in safeguarding against employees who would otherwise betray them. As the court in [**Quaker Chemical Corp. v. Varga**, 509 F. Supp. 2d 469, 480 (E.D.Pa. 2007) (applying Pennsylvania law)] reasoned:
>
>> [I]n a case such as this, the harm to the employee almost always seems greater than the harm to the company. The employer, as a company—in this case, a very successful company, it appears—will be able to financially survive an employee's leaving for a competitor. And the employee, as an individual, apparently will have a hard time financially surviving if he is out of work. By this superficial calculus, the harm to the employee is always greater. … If this were the rule, no restrictive covenant would be enforced against a large and successful company.
>
> But the numerous courts that have specifically enforced noncompete covenants against the employee have concluded that, regardless of the relative wealth of the employer and employee, the harm to the employer trumps the harm to the employee.

**Id.** at 918 (citation omitted).

Instantly, the trial court improperly balanced the parties' disparate financial positions. **See** Trial Court Opinion, 10/25/21, at 5 (distinguishing Defendants as "individuals with families," from Appellant, "a well established company").

Critically, the trial court failed to factor Appellant's "protectible interests against [Defendants'] interests in earning a living in [their] chosen occupation and the public interest[.]" **AmQuip**, 199 A.3d at 918.

- 13 -

The record reflects that Defendants were not barred from earning a living in their chosen profession. For example, George admitted she listed properties outside of the restricted area. *See* N.T., 6/3/21, at 96 (describing a $665,000 home she listed outside of the restricted area). Both Defendants were free to work as real estate agents, with the exception of the 5-mile prohibition for the six- or eight- month term set forth in the respective Agreements. Consequently, we discern no apparently reasonable grounds for the trial court's denial of a preliminary injunction on this basis. ***See Summit Towne Centre***, 828 A.2d at 1000.

For the above reasons, we conclude that no apparently reasonable grounds exist for the trial court's determinations that (1) Appellant failed to establish irreparable harm resulting from Defendants' actions; and (2) greater harm would result from granting the preliminary injunction than from denying it. Accordingly, we reverse the order denying injunctive relief and remand for further proceedings. On remand, the trial court shall determine whether Appellant has established the remaining prerequisites for a preliminary injunction. ***See Porter***, 204 A.3d at 416.

Order reversed. Case remanded for further proceedings consistent with this Memorandum. Superior Court jurisdiction relinquished.

Judge Sullivan joins the memorandum.

Judge Colins files a Dissenting statement.

- 14 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/23/2022