J-S18032-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DANA VARDZEL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| BRIAN VARDZEL | : | |
| | : | |
| Appellant | : | No. 1471 WDA 2023 |

Appeal from the Order Entered December 1, 2023
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): FD-23-002045-017

| | | |
|---|---|---|
| BRIAN VARDZEL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DANA VARDZEL | : | No. 1472 WDA 2023 |

Appeal from the Order Entered December 1, 2023
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): FD-23-002050-017

| | | |
|---|---|---|
| BRIAN VARDZEL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DANA VARDZEL | : | No. 1473 WDA 2023 |

Appeal from the Order Entered November 14, 2023
In the Court of Common Pleas of Allegheny County
Family Court at No(s): FD-23-002050-017

| | | |
|---|---|---|
| DANA VARDZEL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |

V.                                          :
                                            :
BRIAN VARDZEL                               :
                                            :
        Appellant                           :
                                            :
                                            :    No. 1474 WDA 2023

Appeal from the Order Entered November 14, 2023
In the Court of Common Pleas of Allegheny County
Family Court at No(s):  FD-23-002045-017

BEFORE:  PANELLA, P.J.E., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:              **FILED: OCTOBER 2, 2024**

In these consolidated appeals,[1] Brian Vardzel ("Father") appeals from the orders denying his request for a protection from abuse order ("PFA"), entering a six-month PFA order on behalf of Dana Vardzel ("Mother") and the parties' three minor children ("the children"),[2] and denying Father's requests for reconsideration.  For the reasons discussed below, we dismiss Father's appeals from the order denying reconsideration, and otherwise affirm.

The parties have been married for over twenty years and have three children.  **See** Trial Court Opinion 2/16/24, at 3 ("Trial Court Opinion 1")[3]; N.T., 11/14/23, at 4.

_____

[1] This Court consolidated the appeals *sua sponte* in February 2024.

[2] E.V. (age fifteen) ("Older Son"), J.V. (age thirteen) ("Younger Son"), and B.V. (age ten) ("Daughter").

[3] The trial court issued two opinions on the same day concerning the four orders at issue in the instant matter.  For ease of use, we refer to the opinion
*(Footnote Continued Next Page)*

- 2 -

On the night of October 24, 2023, Older Son and Younger Son were quarreling and Mother attempted to mediate. *See* N.T., 11/9/23, at 33. The boys went upstairs, and Father emerged from his bedroom, "screaming at the top of his lungs" at Older Son to "shut up." *Id*. Mother climbed the stairs and saw Father "charging" at Older Son with "intensity and determination." *Id*. at 34. Mother grabbed the back of Father's collar to try to stop his advance at Older Son but was unsuccessful. *See id*. As Father entered Older Son's bedroom, Mother placed herself between Father and Older Son as Father continued to scream at both and told Mother to "shut up." *Id*. Mother recalled she was

> looking at [Father's] face and it is so tight[,] and I can see all the lines and everything and the look in his eyes. And [I was] just very aware of his strength and just the whole look and everything. I just felt that in the next moment he was going to snap. I just knew that if he did, that there was nothing I could do to protect [Older Son] [or] to protect myself.

*Id*.

> Older Son testified that during his quarrel with his brother,
>
> [Father] starts like raging out on me, and he's like charging at me. And [Mother's] like coming up the stairs, and . . . he's coming at me.
>
> Then she's getting in front of him -- she was coming from behind because I was backing toward my room, and she's grabbing at his shirt because it was really scary how he was like moving and charging.

_____

concerning the denial of Father's petition for a PFA order as "Trial Court Opinion 1" and the opinion granting Mother's petition for a PFA order as "Trial Court Opinion 2."

So, I'm like backing toward my bed, and [Mother's] like trying to get in front of him still holding onto his shirt because he's not stopping. So[,] I'm on my bed, and I'm like really scared because I didn't expect that to just happen . . . he always does stuff like that.

Anyway, it just went from nothing to something really quick[ly and] escalated. Then [Mother's] in front of him, and then he's like screaming in my face, started screaming at me, getting in my face, yelling at me.

I'm like crawling back on my bed toward like the back of it to like get away from him because he was like holding his hands -- not down but up-ish. So[,] it's like I didn't know what he's feeling. So[,] I was really scared, and then [Daughter's] screaming because he starts -- he like backs away, and he just goes back to [Younger Son's] room again. And [Mother's] still in front of him because like we don't know what he is going to do.

Then he starts screaming and telling [Mother] to shut up, and he's like towering over her. And I was scared at that part, and [Daughter] was like running around screaming. So then apparently [Younger Son] was under his bean bag -- he has like a big bean bag chair. He was hiding under it the whole time because he was like pretty afraid.

\* \* \* \* \*

When [Father's] like raging, he's charging and stuff, . . . he's screaming. His eyes, he looks like he wants to hurt somebody. He looks like he's having trouble controlling himself. It's like he's insane and has like an anger in his eyes, and it's really scary.

*Id*. at 8-11.

Mother sought, and was granted, a temporary PFA order on October 26, 2023. Father filed a request for a temporary PFA petition on October 30, 2023, **which the trial court denied**. The Court scheduled a hearing on both petitions for November 9, 2023, and Mother and Father testified on that date.

- 4 -

The trial court continued the hearing until November 14, 2023, when it heard Older Son's testimony.

Following her testimony regarding the October 24, 2023, incident, Mother explained the long history of physical and verbal abuse Father perpetrated against her and the children. *See* N.T., 11/9/23, at 35-43. She stated that on multiple occasions Father spat on her, pushed and shoved her (causing bruises), picked up items and "swung" them at her head, and once held her so tightly she could not move before shoving her into a wall, bruising her. *See id*. at 35-36. Mother also detailed Father's tendency to direct explosive rages and verbal abuse at her and the children. *See id*. at 36-43. She specified he frequently called her a "liar," "bitch," and "failure," and made accusations and threats. *Id*. at 37, 40. Mother noted the October 24th incident was not the first time Father charged at Older Son and she had to physically intercede to protect the child. *See id*. at 40.

Older Son testified Father went into rages "a lot of times." N.T., 11/14/23, at 12. Older Son commented when he argued with Younger Son, Father did not try to assist in resolving the dispute, just got enraged at all parties. *See id*. He noted that Father "didn't really care" what was going on during the October 24th incident but "was just trying to . . . escalate the situation." *Id*.

Older Son described the family's home life as peaceful when Father was not around but stated when Father was around "[h]e always just starts saying

stuff and like really starting something. . . . he might call [Mother] names."
*Id*. at 14, 17. Older Son noted he sometimes tried to stand up for Mother but
Father would get "really mad" at him and described Father as "always
criticizing" and trying to provoke Mother. *Id*. at 15, 17. Older Son said it had
been like that for "as long as I can really remember." *Id* at 15. Older Son
confirmed Father spat on Mother, and he found it frightening. *See id*. at 17.

Older Son blamed Father for most of the incidents with Mother, stating:

> Well, I think he really does a lot of stuff to [Mother] because
> he's trying to instigate her and like trying to hurt her like mentally
> and physically sometimes. I'm sick of putting up with it. It really
> sucks that he just does this.

*Id*. at 17-18. Older Son said the incidents he described really frighten
Daughter who does not understand "what a normal life is." *Id.* at 18. Older
Son also maintained Younger Son did not like to talk about the incidents, but
Older Son could see "how it affects him mentally." *Id*. Older Son averred life
had been much better since Father was excluded from the home, saying it
was "peaceful" and it felt "a weight has been lifted," whereas when Father was
present it was "a constant burden[.]" *Id*. at 19. Older Son could not
remember any happy times with Father, noting Father was his baseball coach
and he quit playing baseball in part for that reason. *See id*. at 19-20.

Older Son explained he did not "feel safe" when Father was around:

> He's just horrible to us, and I don't know what he's going to
> do . . . because . . . he can do stuff to us. So[,] it's scary.

And like it looks like he has a hard time controlling himself when these outrageous things happen. He just looks like he's more and more insane and crazy.

*Id*. at 20-21.

Mother testified how Father used money to control her and the family. *See* N.T., 11/9/23, at 41-51. She noted Father denied access to money since she stopped working. *See id*. at 41. She said Father refused to talk about finances or let her look at budgets, and she has to "beg for every cent." *Id*. She told the court Father does not allow her to do the grocery shopping because she is "too stupid." *Id*. Mother delineated in detail how she and the children drive around with the gas light on or the gas tank almost empty because she has to text Father for money, and he makes them wait for long periods of time at gas stations before he sends her enough money to put some gas in the car, although not enough to fill it. *See id*. at 42. Mother produced photographs, text exchanges, and records from her bank, which substantiated her contentions. *See id*. at 44-49. Mother stated Father would disappear for days at a time leaving the family without access to money. *See id*. at 53-54.

Older Son corroborated this testimony, describing sitting at gas stations for extended periods of time waiting for Father to text Mother money. *See id*. at 23-24. He noted they were also driving with little gas and that this was frightening. *See id*. at 24.

Mother admitted that when Father's abuse gets intolerable and calls her "a piece of shit and treats her like one," she has "lashed out" at him. *Id*. at

- 7 -

55. She maintained that she was not the aggressor and did not instigate these instances but responded "in defense of myself and in defense of the kids[.]" *Id*.

Older Son said he has never seen Mother hurt Father. *See* N.T., 11/14/23, at 22. He noted the physical disparity between Mother and Father and maintained if she "physically made contact" with Father it was in response to Father's provocation or to protect Older Son and his siblings. *Id*.

Father testified to an entirely different version of the events. The trial court stated, "Father portrayed himself as a victim of domestic violence, alleging that Mother committed physical and mental abuse upon him throughout the course of their marriage, and particularly over the last five years." Trial Court Opinion 1, at 3. Father testified to numerous unprovoked physical attacks by Mother over many years, some involving knives, and claimed he suffered serious injuries. *See* N.T., 11/9/23, at 114-34. Father then showed what the trial court referred to as "carefully curated documentary evidence of th[]e alleged abuse, [resulting from his] taking and carefully preserving photos and videos depicting his injuries and Mother's actions." Trial Court Opinion 1, at 3. As the trial court noted, Father never sought medical attention for these injuries, never left the residence, never reported Mother's actions to the police, and never previously sought a PFA order; he admitted he took the photographs and videos for the purpose of obtaining evidence against Mother and stored them on a hard drive which he kept in a

safe in the residence. *See id*. at 4; *see also* N.T., 11/9/23, at 119-21, 124-25, 130.

Following the hearing, the trial court issued orders denying Father's request for a PFA order and granting Mother's. Father filed motions for reconsideration which the trial court denied in a single order; however, in that order, the trial court modified the custody provisions from Mother's final PFA order. The instant, timely appeals followed.[4]

On appeal, Father raises the following issues for our review:

1. Did the court below err and abuse its discretion by granting Mother's PFA order generally and more specifically as follows:

a. In granting a PFA order when the evidence did not demonstrate by a preponderance of the evidence that Father abused either Mother or any of the minor children, and where, in fact, there was a complete lack of evidence that Father abused either Mother or any of the minor children;

b. In granting custody of the children to Mother despite the preponderance of evidence of Mother's abusive, violent behavior;

c. In finding that the children were protected parties under the order;

d. In permitting evidence to be admitted of alleged "financial abuse" by Father of Mother;

e. In permitting the testimony of the minor child;

f. In failing to question the minor child with the questions proposed by counsel for Father, generally and specifically

_____

[4] Father and the trial court complied with Pa.R.A.P. 1925.

with regard to his witnessing Mother attack Father with a knife in his presence;

g. In asking leading questions of the minor child; and

h. In entering an order that protected all three minor children when no evidence was offered with regard to two of the minor children?

2. Did the court below err and abuse its discretion by dismissing Father's PFA order generally and more specifically as follows:

a. In dismissing Father's PFA order where Father demonstrated by a preponderance of the evidence that Mother abused Father;

b. In failing to grant custody of the children to Father despite the preponderance of evidence of Mother's abusive, violent behavior;

c. In permitting the testimony of the minor child;

d. In failing to question the minor child with the questions proposed by counsel for Father, generally and specifically with regard to his witnessing Mother attack Father with a knife in his presence; and

e. In asking leading questions of the minor child?

3. Did the court below err[] and abuse its discretion by failing to enter a PFA order against Mother generally and more specifically as follows:

a. In failing to enter a PFA order where Father demonstrated by a preponderance of the evidence that Mother abused Father;

b. In failing to grant custody of the children to Father despite the preponderance of evidence of Mother's abusive, violent behavior;

c. In permitting the testimony of the minor child;

d. In failing to question the minor child with the questions proposed by counsel for Father, generally and specifically with regard to his witnessing Mother attack Father with a knife in his presence; and

e. In asking leading questions of the minor child?

4. Did the court below err and abuse its discretion by refusing to remove the PFA order against Father on behalf of Mother and the minor children generally and more specifically as follows:

a. In refusing to remove the PFA order when the evidence did not demonstrate by a preponderance of the evidence that Father abused either Mother or any of the minor children, and where, in fact, there was a complete lack of evidence that Father abused either Mother or any of the minor children; and

b. In failing to remove the children as protected parties under the PFA order when the evidence did not demonstrate by a preponderance of the evidence that Father abused either Mother or any of the minor children?

5. Did the court below err and abuse its discretion by amending the custody provision of the PFA order on behalf of Mother and the minor children as follows:

a. In ruling that the minor children shall not be in the physical custody of Father for at least thirty (30) days from the date of the PFA order, when the evidence did not demonstrate by a preponderance of the evidence that Father abused either Mother or any of the minor children;

b. In ruling that Father may exercise supervised custody once per week after the 30 days, when the evidence did not demonstrate by a preponderance of the evidence that Father abused either Mother or any of the minor children;

c. In ruling that Father's custodial time must be supervised by another third-party until expiration of the PFA order, when the evidence did not demonstrate by a preponderance of the evidence that Father abused either Mother or any of the minor children; and

> d. In letting an unknown therapist make custody determinations?

Father's Brief at 10-14 (capitalization regularized).

Prior to addressing the merits of Father's claims, we address which, if any, of the four appeals filed in this matter are properly before us.[5] **See Rivas v. Villegas**, 300 A.3d 1036, 1044-45 (Pa. Super. 2023). This Court has stated:

> [T]he appealability of an order directly implicates the jurisdiction of the court asked to review the order. We note because questions concerning the appealability of an order go to jurisdiction, they may be raised *sua sponte* by this Court. Jurisdiction is purely a question of law; the appellate standard of review is *de novo*, and the scope of review plenary. Generally, for an order to be appealable, it must be (1) a final order; (2) an interlocutory order appealable by right or permission; or (3) a collateral order.

> Pursuant to the Pennsylvania Rules of Appellate Procedure, "a final order is one that disposes of all claims and of all parties or is entered as a final order pursuant to Pa.R.A.P. 341(c)."

*Id*. (some citations, brackets, and quotation marks omitted).

Father's appeals at case numbers 1471 and 1472 WDA 2023 concern the order which denied his motions for reconsideration but amended the custody provisions of the PFA. It is long settled that orders denying motions for reconsideration are not appealable. **See Huntington Nat. Bank v. K-**

---

[5] This Court issued rules to show cause why the appeals at case numbers 1471, 1472, and 1474 WDA 2023 should not be dismissed. Father filed a response. This Court subsequently discharged the rules and referred the issues to the merits panel.

***Cor, Inc.***, 107 A.3d 783, 787 (Pa. Super. 2014) (holding "Pennsylvania case law is absolutely clear that the refusal of a trial court to reconsider, rehear, or permit reargument of a final decree is not reviewable on appeal.") (citation omitted).  Here, the trial court's November 30, 2023, order expressly denied reconsideration.  ***See*** Order, 11/30/23, at 1 (unnumbered).  Thus, to the extent the November 30, 2023, order denies reconsideration, it is not appealable. ***See Huntington***, ***supra***.  Therefore, we will not further address Father's fourth issue raising claims relating to the denial of reconsideration.

Although it denied reconsideration, the November 30, 2023, order did modify the custody provisions contained in the PFA order.  With respect to the appealability of custody orders, this Court has stated, "[g]enerally, a custody order will be considered final and appealable only if it is both: (1) entered after the court ***has completed its hearings on the merits***; and (2) intended by the court to constitute ***a complete resolution of the custody claims pending between the parties***."  ***Wagner v. Wagner***, 887 A.2d 282, 285 (Pa. Super. 2005) (emphases added).  Here, the record reflects the parties' custody dispute is ongoing: the trial court's November 17, 2023, order reflects Father filed a complaint for custody, and its November 30, 2023, order states an interim relief hearing is scheduled.  ***See*** Order, 11/17/23, at 1 (unnumbered); Order, 11/30/23, at 2 (unnumbered).  Because the trial court has not completed its hearings on the pending custody dispute, and because the orders on appeal plainly do not constitute a complete resolution of the

parties' custody claims, the November 30, 2023, Order is not properly before us for this reason as well.[6]  Therefore, we dismiss the appeals docketed at case numbers 1471 and 1472 WDA 2023.

In case number 1474 WDA 2023, Father appeals from the trial court's grant of a PFA on behalf of Mother and the minor children.  That PFA order expired on May 14, 2024, and therefore we address whether this appeal is moot.  ***See M.B.S. v. W.E.***, 232 A.3d 922, 927 (Pa. Super. 2020) (stating we may address mootness *sua sponte*) (citations omitted).  It is well-established:

> [a]s a general rule, an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot. An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an intervening change in the applicable law.  In that case, an opinion of this Court is rendered advisory in nature.  An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.

***Id***. (citations omitted).  However,

> [t]his Court will decide questions that otherwise have been rendered moot when one or more of the following exceptions to the mootness doctrine apply: 1) the case involves a question of great public importance, 2) the question presented is capable of repetition and apt to elude appellate review, or 3) a party to the controversy will suffer some detriment due to the decision of the trial court.  . ..  [T]his Court has employed exceptions to the mootness doctrine to review issues stemming from expired PFA orders.

---

[6] In issues 1(b), 2(b), and 3(b), Father challenges the ***temporary*** grant of custody to Mother.  We decline to address these claims for the reasons discussed above.  ***See Wagner***, 887 A.2d at 285.

*Ferko-Fox v. Fox*, 68 A.3d 917, 920 (Pa. Super. 2013) (internal quotation marks and citation omitted).

Father's appeal meets the third exception to the mootness doctrine, as he may suffer some detriment due to the trial court's final PFA order. As this Court has recognized, "[a]t the very least, the present PFA order may be considered by the trial court in any subsequent PFA proceedings, as well as in any child custody proceedings." *N.H. v. M.E.*, 2019 WL 3780900, at *2 (Pa. Super. filed Aug. 12, 2019) (citing 23 Pa.C.S. § 6107(a)).[7] Further, the expired PFA order "would also appear in a criminal history records check conducted by the Pennsylvania State Police." *Id*. (citing 23 Pa.C.S. § 6105(e)(3)). Accordingly, because Father may suffer some detriment due to the final PFA order, we will not deem his appeal moot. *See id*.

Lastly, at case number 1473 WDA 2023, Father appeals from the trial court's denial of his request for a PFA order. The Pennsylvania Rules of Appellate Procedure provide, "[a] timely order granting reconsideration under this paragraph shall render inoperative any such notice of appeal or petition for review of a quasijudicial order theretofore or thereafter filed or docketed with respect to the prior order." *See* Pa.R.A.P. 1701(b)(3)(ii). Here, as discussed above, the November 30, 2023, order *denied* reconsideration but amended the custody provisions of the PFA order granted on behalf of Mother

---

[7] *See* Pa.R.A.P. 126(b) (unpublished non-precedential memoranda decision of Superior Court filed after May 1, 2019, may be cited for persuasive value).

and the children. Since, except for the custody issue discussed above, the order denying reconsideration did not impact the denial of Father's request for a PFA order on behalf of himself, Father's appeal of the denial of his PFA request is properly before us.

Thus, in sum, we dismiss Father's appeals of the orders denying reconsideration but amending the custody provisions in cases 1471 and 1472 WDA 2023. We also decline to consider the custody issues raised in the appeals from the orders in case 1473 and 1474 WDA 2023.

Having decided the questions of appealability, we now address the serious deficiencies in Father's brief and how these deficiencies impede our review. Appellate briefs must conform materially to the requirements of the Pennsylvania Rules of Appellate Procedure, and this Court may dismiss an appeal if the defects in the brief are substantial. *See* Pa.R.A.P. 2101 (providing that "if the defects . . . in the brief . . . are substantial, the appeal . . . may be . . . dismissed"). This Court will not act as counsel and will not develop arguments on behalf of an appellant. *See Coulter v. Ramsden*, 94 A.3d 1080, 1088-89 (Pa. Super. 2014); *Bombar v. West American Ins. Co.*, 932 A.2d 78, 94 (Pa. Super. 2007).

Father's brief is defective. His statement of the questions involved does not comply with Pa.R.A.P. 2116(a) and its accompanying *Note*. Father's statement of the facts does not comply with Pa.R.A.P. 2117(a)(4), (b), and (c). Father's argument is not in compliance with Pa.R.A.P. 2119(a), (c), (d),

- 16 -

and (e). Father's failure to conform with our appellate rules leaves this Court unable to meaningfully review the substance of his issues numbered 1(e), (f), and (g), (2)(c), (d), and (e), and 3(c), (d), and (e), compelling us to find these issues waived.[8] **See** Pa.R.A.P. 2101.

Father's remaining, repetitive issues can be essentially divided into four claims: 1). the trial court erred and abused its discretion in granting Mother a PFA order (issue 1(a)), **see** Father's Brief at 10, 27-28, 2) the trial court erred and abused its discretion in not granting Father's request for a PFA order (issues 2(a) and 3(a)), **see** Father's Brief at 11-12, 23-26, 3) the trial court erred in finding the minor children "protected parties" under the PFA Act and in granting a PFA order on their behalf (issues 1(c) and (h)), **see** Father's Brief, at 10-11, 27-29, and 4) the trial court erred in admitting evidence regarding Father's financial control over Mother (issue 1(d)). **See** Father's Brief at 11, 31-32.

---

[8] These issues concern the trial court's decisions to allow Older Son to testify, to decline to use proposed questions (submitted without court permission) by Father when questioning Older Son, and to ask the child allegedly leading questions. Father fails to cite to, and this Court has been unable to locate, any place in the record where Father preserved these issues for our review. It is "not the responsibility of this Court to scour the record to prove that an appellant has raised an issue before the trial court, thereby preserving it for appellate review." **Commonwealth v. Baker**, 963 A.2d 495, 502 n.6 (Pa. Super. 2008) (citation omitted). Moreover, Father does not address his claim that the trial court erred in not using his proposed questions in the argument section of his brief. **See** Father's Brief at 23-33. Thus, Father waived these claims. **See Baker**, **supra**; **see also** Pa.R.A.P. 2117(c); 2119(e).

In his first two issues, Father challenges the trial court's grant of Mother's PFA petition and the denial of his PFA petition. *See* Father's Brief at 23-28. Father argues his testimony, Older Son's testimony, and various photographs and videos he submitted to the trial court demonstrate Mother placed him in reasonable fear of imminent serious bodily injury and attempted to harm him. *See* Father's Brief at 23-26. Father maintains Mother failed to demonstrate the same. *See id*. at 27-28.

The trial court explained its reasons for denying Father's request for a PFA order while granting Mother's. It stated:

> [i]mportantly, Father sought PFA protection for an incident that occurred on **October 22, 2023**, which, according to Father, involved Mother punching him in the back, leaving a welt/bruise. As apparently occurred during and after every negative encounter with Mother, Father carefully documented the incident by taking a photograph to preserve "the evidence" but otherwise took no other action. He then states that he went upstairs to hide. Curiously, and quite probative as to Father's state of mind at the time of this occurrence, Father did not file his PFA [petition] until **after** Mother's filing. The timeline alone caused [the trial court] to question the motivation and veracity of Father's petition.
>
> [The court] found Father to be an uncredible witness, both generally and with respect to this incident. While Father introduced images depicting the alleged physical marks on his back, there is no credible evidence establishing that Mother caused the mark. Mother is a woman of slight stature and build. Could Mother have impacted [sic] Father with such force as to cause the "injury" which Father urges this court to find? Assessing the credibility of the parties within the context of all the evidence presented, [the court] was unable to conclude that [assertion] affirmatively, and certainly not to the extent necessary to grant Father PFA protection.

* * * * *

- 18 -

[The court] listened to the testimony of the parties, reviewed the submitted evidence, and assessed the credibility of the witnesses: Father, Mother, and [Older Son]. [The court] found [Older Son] to [be] tremendously credible. He presented as a conscientious, frightened, nervous, fifteen[-year-old] boy who reluctantly found himself in court, was not especially fond of it, but did his best to fully explain what happened . . .. [The court] found Father to lack all credibility. Father always sought to advance his narrative of victimization. [The court] believe[s] that Father's allegations of abuse are an attempt by him to cover-up and perpetrate the abuse which [the court] heard about from Mother and [Older Son] pursuant to Mother's own petition. Father failed to meet his burden under the PFA Act. Father failed to convince the [court] of predicate, necessary facts that he needed to establish to make his case. Father cannot complain on appeal that a different result on those same facts should ensue.

Trial Court Opinion 1, 2/16/24, at 10-11 (capitalization regularized; record citations omitted, emphasis in original).

With respect to its grant of a PFA petition on behalf of Mother and the minor children, the trial court explained:

[The court] premised the PFA Order upon Father engaging in conduct prohibited by category #2 of the Act, placing Mother and the minor children in "reasonable fear of serious bodily injury" by virtue of [Father's] rage-filled tirade on the evening of October 24, 2023.

[M]other and [Older Son] offered specific testimony about this incident. They both described their present sense impressions and feelings when confronted by Father, and they adequately explained to the satisfaction of this court why exactly they stood in fear of Father. Quite clearly, it appeared to [the court] that [Older Son] was terrified of his Father. . . .

* * * * *

The testimony that [the court] heard about the incident in question led [the court] to conclude that Father reasonabl[y] appeared to his family to be unhinged, and capable and willing to engage in violent conduct. Father placed the family in fear. Under

- 19 -

the PFA Act, actual physical injury is not required. The victim's fear of imminent serious bodily injury must merely be **reasonable**. The Act does not call for actual physical contact, and the victim is not required to wait for actual physical or sexual abuse for the Act to apply. Thus, in **Fonner v. Fonner,** 731 A.2d 160 (Pa. Super. 1999), where [defendant] . . . . followed the wife through the home, was angry, upset, loud, badgering, stood in front of her and blocked her exit, touched her arm and at one point punched the wall in front of his wife, th[e] testimony was adequate to support wife's testimony that the defendant's actions placed her in reasonable fear of imminent bodily harm. **See Fonner**, 731 A.2d at 163.

Father's angry confrontation of [Older Son] and Mother on October 24th placed the family in reasonable fear of imminent harm. What occurred on that evening was no ordinary disagreement or loud argument. From the testimony [the court] heard, [the court] inferred that a future conflagration along these same lines could certainly result in actual physical violence being perpetrated by Father. Therefore, under the circumstances, the PFA Order that [the court] entered of a relatively short duration, [the court] believe[s], advanced the prophylactic purposes of the PFA Act by intervening in a situation prior to the commission of acts causing physical injury.

The testimony of Mother and [Older Son] provided [the court] with an appropriate basis upon which to issue [the] order. Notably, as well, [the court] found Father to be a wholly uncredible witness. In this respect, [the court] wish[es] to incorporate by reference [the] companion opinion [Trial Court Opinion 1] at which [the court] expound[s] at length on [its] problems with Father's credibility [and its basis for finding Older Son credible].

\* \* \* \* \*

. . . Had [the court] declined to enter a PFA Order, [the court is] convinced that [it] would have returned [Older Son] to an unsafe, volatile situation. [The court] juxtapose[s Older Son's] credibility with Father's total lack thereof. Whether in advancing his PFA claims or in responding to those of Mother, Father constantly sought to advance a narrative of victimization. Father failed to effectively rebut the claims made against him by Mother. Mother met her burden by setting forth sufficient facts through witnesses upon which a PFA [order] could be granted. [The court]

- 20 -

believed Mother's claims, finding her and [Older Son] to be credible with respect to them. Father had an opportunity to present other witnesses or evidence that perhaps could have contested those claims or caused [the court] to make a different credibility assessment. However, Father chose to rely upon his own testimony. [The court] committed no error of law or abuse of discretion in ruling against Father and issuing a short-term PFA against him.

Trial Court Opinion 2, 2/16/24, at 9-11 (capitalization and citation format regularized).

The PFA Act defines "abuse" in pertinent part, as follows:

The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:

(1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, [or] serious bodily injury. . . with or without a deadly weapon.

(2) Placing another in reasonable fear of imminent serious bodily injury.

23 Pa.C.S.A. § 6102(a)(1), (2).

We are unable to determine from Father's arguments on his first two issues whether he is challenging the sufficiency or the weight of the evidence or both. **See** Father's Brief at 23-28. We will thus address both sufficiency and weight.

When a claim is presented on appeal that the evidence is not sufficient to support a PFA order, the appellate court must "view the evidence in the light most favorable to the petitioner, granting her the benefit of all reasonable inference[s.]" **Fonner**, 731 A.2d at 161. Section 6107(a) of the PFA Act

- 21 -

provides "the plaintiff must prove the allegation of abuse by a preponderance of the evidence." 23 Pa.C.S.A. § 6107(a). "The preponderance of evidence standard is defined as the greater weight of the evidence, *i.e.*, to tip a scale slightly is the criteria or requirement for preponderance of the evidence." ***Ferri v. Ferri***, 854 A.2d 600, 603 (Pa. Super. 2004) (citation omitted).

With respect to Father's challenge to the weight of the evidence, as an appellate court, "we defer to the trial court's credibility determinations, and we are not entitled to re-weigh the evidence." ***K.B. v. Tinsley***, 208 A.3d 123, 129 (Pa. Super. 2019); ***see also C.H.L. v. W.D.L.***, 214 A.3d 1272, 1276 (Pa. Super. 2019) (stating "the credibility of witnesses and the weight to be accorded to their testimony is within the ***exclusive*** province of the trial court as the fact finder." (emphasis added)).

Father first contends Mother was not entitled to PFA relief. ***See*** Father's Brief, at 27-28. However, Father waived this claim by advancing a two-paragraph argument devoid of citation to the record or pertinent legal authority. ***See In re M.Z.T.M.W.***, 163 A.3d 462, 465-66 (Pa. Super. 2017) (explaining "a claim is waived where an appellate brief fails to provide any discussion of the claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review").

Even if not waived, the claim would not merit relief. Viewed in the light most favorable to Mother, the evidence established Father responded to a spat between the two boys by screaming at the top of his lungs, charging at Older

Son with upraised hands, continuing to come towards him even though Mother was holding onto his shirt trying to stop him, to the point Older Son was crawling backwards on his bed to get away from Father. During this confrontation, Daughter was screaming, crying, and running around, while Younger Son was hiding under a bean bag chair in his room. Both Mother and Older Son testified to their fear of Father. Thus, we find the trial court did not err in finding Mother demonstrated by a preponderance of the evidence she was in reasonable fear of imminent serious bodily injury. **See Thompson v. Thompson**, 963 A.2d 474, 478 (Pa. Super. 2008) (holding evidence sufficient to sustain grant of PFA order son's testimony that while he was walking to school his father followed him in car, screamed at him, then sped past him so closely that he swiped son's jacket); **Fonner**, 731 A.2d at 163.

To the extent Father claims the trial court's decision was against the weight of the evidence, it was the trial court's determination that Mother and Older Son were credible, and Father was not. Father is asking to "re-litigate the facts and the PFA court's credibility findings[,]" which we cannot do on appeal. **C.H.L.**, 214 A.3d at 1276-77. Thus, even if not waived, Father's first issue would not merit relief.

In his second issue, Father claims the trial court erred or abused its discretion in not granting him a PFA order. **See** Father's Brief, at 23-26. Father argues Mother "physically and verbally abused him over the years and

on multiple occasions." *Id*. at 24. Father then details the alleged evidence of abuse contained within the various photographs and videos.[9]

Father ignores that his evidence was only sufficient to satisfy his burden of proof *if the trial court credited it*. Here, as quoted above, the trial court explicitly found Father was not credible, only sought a PFA order to retaliate against Mother, and his photograph and video evidence was "carefully curated" and did not prove the cause of many of his alleged injuries. *See* Trial Court Opinion 1, 2/16/24, at 1, 9-11. We have no basis to disturb these credibility findings, which are clearly supported by the record, and we decline Father's invitation to reweigh the evidence. *See Karch v. Karch*, 885 A.2d 535, 537 (Pa. Super. 2005) (holding this Court does not have the authority to overturn the trial court's credibility determinations in a PFA case). Father's second issue does not merit relief.

---

[9] This Court has been unable to review the photographs and videos; the videos were not included in the certified record and the photographs were included but are in such poor condition that they are unreviewable. This Court has clearly stated that it is an appellant's responsibility to ensure that the certified record contains all documents and exhibits necessary to ensure that this Court is able to review his claims and that they are in a legible form. *See Commonwealth v. Preston*, 904 A.2d 1, 7 (Pa. Super. 2006) (en banc); Pa.R.A.P. 1926; Pa.R.A.P. 1931.

Father's third issue contends the trial court erred in granting PFA relief on behalf of the children. *See* Father's Brief at 28-29. The trial court explained:

> [t]he testimony of Mother and [Older Son] established to [the trial court's] satisfaction under the applicable preponderance of the evidence standard that all the minor children stood in "reasonable fear of imminent serious abuse." 23 Pa.C.S.A. § 6102. [The Court] inferred the fear of the children in several ways based on the content of the eviden[ce], which is largely recounted in excerpts [cited above]. Most compelling [were Oldest Son's] statements during the court's interview of him. [Oldest Son] . . . described his own fear of Father[,] as well as explaining the reactions of the other children in response to Father's behavior on October 24th. The court's inference of fear in this matter comports with the Superior Court's reasoning in *T.K. v. A.Z.*, 157 A.3d 974 (Pa. Super. 2017). There, the [Superior] Court noted that the appellee's fear was evident from her testimony:
>
>> Although Appellee did not use the specific word "fear," she clearly testified to her deep concern for her safety, opining that Appellant's behavior would eventually escalate from repetitive stalking to seeking to cause her bodily harm.
>
> *Id*. [a]t 978. The use of the word "escalate" above is noteworthy since this concept was foremost in the [trial court's] mind when [it] entered the final PFA order. The purpose of the PFA Act is to *prevent* abuse, not to wait for it to occur or abide one's time until certain "magic words" are spoken. From listening to the testimony that described the incident in question, the past history between the parties, and the current family dynamic, [the court] could not have allowed the parties to leave the courtroom with the status quo continuing to prevail. That status quo was untenable, and it was increasing in volatility. Evidence was presented from which [the court] reasonably concluded that the children were fearful of both imminent and serious abuse as defined by the PFA Act if Father were permitted to return to the household and were he to re-engage in behavior similar to that which brought the parties into court. Further, this court harbored deep concerns that Father's conduct would have escalated to involve physical assault upon Mother and the children. Thus, the six-month PFA that [the

court] entered provided all parties involved with a sufficient period to cool off, seek services and address the serious issues plaguing this family.

Trial Court Opinion 2, 2/16/24, at 12-13 (capitalization and citation form regularized).

Here, both the law and the record support the trial court's findings. Moreover, Father's argument on this issue is devoid of any citation to pertinent legal authority, and selectively chooses the evidence viewing it in the light most favorable to himself rather than Mother and the children, who were the prevailing parties. Thus, Father's third issue does not merit relief. **See T.K.**, 157 A.3d at 978.

Father final issue asserts the trial court erred in admitting evidence of his economic control over Mother. **See** Father's Brief, at 31-32. Father's five-sentence argument on this issue fails to discuss our standard of review, does not include citation to pertinent legal authority, and ignores the trial court's explicit recognition that "financial abuse" is not an enumerated category of abuse under the PFA Act, and its explanation of why it believed the evidence was both admissible and relevant. **See id**.; **see also** Trial Court Opinion 2, at 13-14. Thus, we find Father waived this undeveloped claim. **See M.Z.T.M.W.**, 163 A.3d at 465-66.

Even if not waived, Father's claim would not merit relief. "The admissibility of evidence is a matter addressed to the discretion of the trial court and may be reversed on appeal only upon a showing that the court

abused its discretion." ***Buchhalter v. Buchhalter***, 959 A.2d 1260, 1263 (Pa. Super. 2008) (internal citation omitted).

Here, the trial court stated:

[T]he commission of "financial abuse" is not an enumerated category of abuse under the PFA Act. For this reason, [the court] did not predicate [its] final PFA order upon any alleged "financial abuse" by Father.

Instead, [the court] admitted evidence of the parties' finances and handling of monies because [the court] found that evidence to be relevant and material to their claims and their credibility. "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Pa.R.E. 402. All relevant evidence is admissible, except as otherwise provided by law. ***See*** Pa.R.E. 402. Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence. ***See*** Pa.R.E. 403.

Here, [the court] admitted information about finances and money because [the court] found that it provided [the court] a more complete, fuller picture of the family dynamic in general; and, more specifically, that this evidence tended to rebut Father's characterization of himself as an isolated individual within the home who is largely subject to Mother's whims and aggressions. Therefore, it struck [the court] as relevant that Father did exercise such an apparent decree of control over Mother's spending habits as testified to by Mother. This line of testimony also struck me as relevant in terms of the reasonability of the fear of Mother and children toward Father. Whereas Father sought to portray himself as a guy who had been derogated [sic] to the basement. Mother's evidence tended to show Father as a dominant, controlling person over her[] and the family. Finally, [the court] heard about the financial issues because it may have been material to the subsequent relief that [it] would have granted under the PFA Act such as temporary financial support to Mother. There are a host of reasons why the financial arrangements of the partis can be relevant to an ongoing PFA action.

Because of [the court's] role as fact-finder, [it] carefully ensured that [it] did not misapply or use this evidence in an improper manner. [The court] was not confused or misled by it. It was properly before [the court], and [the court] correctly used it, in part, to assess the credibility of the claims and defenses of the parties. Admission of this evidence cannot serve as a basis upon which to overrule [the court's] order of November 14, 2023.

Trial Court Opinion 2, 2/16/24, at 13-14 (capitalization and citation formats regularized).

We have thoroughly reviewed the law and the record and see no error of law or clear abuse of the discretion by the trial court in admitting this evidence. *See Buchalter*, *supra*. Thus, even if not waived, Father's final claim would not merit relief.

For the reasons discussed above, we conclude Father's claims are either not properly before us, waived, or meritless. Therefore we dismiss the appeals at 1471 and 1472 WDA 2023 and affirm the orders issued in the appeals at 1473 and 1474 WDA 2023.

Appeals at 1471 and 1472 WDA dismissed. Orders affirmed at 1473 and 1474 WDA 2023.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 10/2/2024

- 28 -