J-A26024-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| ERIN EAKIN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JORDAN GENTILE | : | No. 719 WDA 2024 |

Appeal from the Order Entered May 31, 2024
In the Court of Common Pleas of Mercer County Civil Division at No(s):
2017-3319

BEFORE:  BOWES, J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY BECK, J.:                    **FILED: December 30, 2024**

Erin Eakin ("Mother") appeals the order entered by the Mercer County Court of Common Pleas ("trial court") granting the petition for civil contempt for disobedience of a custody order filed by Jordan Gentile ("Father") after it found that Mother violated a condition of the custody order requiring that her periods of partial physical custody be supervised.  Upon review, we affirm in part, vacate in part, and remand for further proceedings.

We glean the following factual and procedural history from the certified record.  Mother and Father (collectively, "Parents") have a minor child together, B.A.E. ("Child") (born January 2014).  Parents never married. Mother initiated court involvement on November 13, 2017 by filing both a complaint for custody of Child and petition for special relief.  When Father failed to appear at the hearing on Mother's petition, the trial court awarded

Mother primary physical custody of Child subject to Father's periods of supervised partial physical custody. Shortly thereafter, Father filed a petition for special relief, which the trial court denied following a hearing. The trial court ordered Mother to continue to have primary physical custody but changed Father's visitation to unsupervised. Following a pretrial conference on April 6, 2018, the trial court, in relevant part, awarded Parents shared legal custody of Child and Mother primary physical custody subject to Father's partial physical custody every weekend from Friday at 4:00 p.m. to Monday at 3:00 p.m.

On February 20, 2024, Father filed a petition for emergency relief.[1] Father alleged that Child was in an unsafe environment with Mother and that Mother was incapable of caring for Child as a result of housing insecurity and drug and alcohol use. He claimed Mother was "spiraling out of control," left Child with "random strangers," and had pending charges against her involving corruption of a minor and truancy relating to her other children. Pet. For Emer. Relief, 2/20/2024, ¶ 5. Following a hearing on March 5, 2024, Parents

---

[1] On June 3, 2019, Mother filed a petition to modify the custody order because Child would be attending school in August 2019. When Parents did not reach an agreement at a Master's conference, the trial court scheduled a prehearing conference for August 5, 2019, which Mother sought to continue. For reasons that are unclear from the record, it does not appear that the trial court ruled on Mother's continuance motion or held the prehearing conference. After Father filed his pretrial memorandum on July 31, 2019, there are no further docket entries until Father filed his petition for emergency relief on February 20, 2024.

agreed, and the trial court ordered, that Father shall have primary physical custody of Child subject to Mother's partial custody, which was limited to video calls every other day.

On April 25, 2024, Mother filed a petition for special relief seeking in-person custodial time with Child. Following a hearing, the trial court entered an order on May 8, 2024, which awarded, inter alia, Mother periods of supervised partial physical custody from 3:00 p.m. to 6:00 p.m. on Sundays until the date of the conciliator's conference scheduled for June 4, 2024. Trial Court Order, 5/8/2024, ¶ 1. The trial court ordered Mother's paramour to supervise the visits. *Id.* The trial court permitted Father to remain "within sight" during the visitation as long as he remained in his vehicle and did not interfere "whatsoever" with the visits.[2] *Id.*, ¶ 2. The trial court's order also allowed Mother to have a ten-minute unsupervised video call with Child three nights per week. *Id.*, ¶ 5.

Relevant to this appeal, on May 16, 2024, Father filed a petition for civil contempt in which he alleged that Mother violated the May 8, 2024 order by failing to ensure Child was supervised during one of Mother's periods of partial

---

[2] The May 8, 2024 order was filed in both the instant action and a separate action involving Mother and Chad Richards ("Richards"), the father to several of Mother's other children. Mother's periods of partial physical custody referenced above also included other children to be supervised by Mother's paramour and allowed Richards to remain within sight from inside his vehicle. While not specified in the May 8, 2024 order, it appears from the record that the visits took place at a park. *See* N.T., 5/30/2024 (Contempt Hearing), at 9.

physical custody.  On May 30, 2024, the trial court held a hearing on the contempt petition, at which Mother appeared with counsel and Father appeared pro se.  Father and Richards testified on Father's behalf and Mother testified on her own behalf.  Mother also presented three photographs purporting to show the supervisor with Child and the other children during the visit at issue.  Immediately following the hearing, the trial court found Mother in contempt based on her violation of the May 8, 2024 order's supervision condition and imposed a sanction of forfeiture of her three-hour period of supervised partial physical custody on June 2, 2024.  On June 4, 2024, Parents appeared before a custody conciliator but were unable to reach an agreement.

On June 14, 2024, Mother filed a notice of appeal.  Both Mother and the trial court complied with the mandates of Rule 1925 of the Pennsylvania Rules of Appellate Procedure.

On July 5, 2024, this Court issued a rule upon Mother to show cause as to the appealability of the trial court's order and why the appeal is not moot. Mother responded, contending that the contempt order is final because it found her in contempt of her custody order and sanctioned her to the forfeiture of one period of supervised partial custody.  She further contended that review of the contempt order is not moot because it is capable of repetition and apt to evade review as Mother is still subject to the custody order and her future non-compliance could result in the trial court's order of loss of custodial time

again as a sanction. Based on Mother's response, this Court discharged the show-cause order.

On appeal, Mother raises several issues for our review.[3] First, Mother asks us to determine whether the trial court's May 31, 2024 order is final and whether an exception to the mootness doctrine applies. Mother's Brief at 3. Next, Mother seeks our review of whether the trial court erred when it found her in contempt and imposed a sanction to forfeit a period of supervised partial physical custody. *Id.* at 4. Finally, Mother asks us to review whether the trial court violated her due process rights by modifying custody without a petition to modify custody before the court or proper notice pursuant to Rule 1915.12 of the Pennsylvania Rules of Civil Procedure[4] that custody would be at issue at the contempt hearing. *Id.* at 3.[5]

## Appealability and Mootness

We first address the appealability of the May 31, 2024 order.[6] Mother argues that it is a final order because the trial court "made a present finding

_____

[3] We have reordered and combined Mother's issues for ease of disposition.

[4] Rule 1915.12 sets forth the required form and content for a petition for civil contempt for disobedience of a custody order, including a notice and order to appear. *See* Pa.R.Civ.P. 1915.12.

[5] We note with disapproval that Father failed to file an appellate brief with this Court.

[6] Mother raises and addresses the issues of appealability and mootness in her appellate brief but did not raise these claims in her concise statement of errors complained of on appeal. *See* Mother's Brief at 3, 9-16. Although ordinarily,
*(Footnote Continued Next Page)*

- 5 -

of contempt and ordered a forfeiture of custodial time as a sanction for contempt." Mother's Brief at 10.

"Generally, an appeal may be taken only from a final order, unless otherwise permitted by rule or statute." **K.M.G.**, 171 A.3d at 842 (brackets and citations omitted); **see also** Pa.R.A.P. 341(a). "A final order is one that disposes of all the parties and all the claims, is expressly defined as a final order by statute, or is entered as a final order pursuant to the trial court's determination." **Id.** (citations omitted); **see also** Pa.R.A.P. 341(b).

"[A] contempt order is final and appealable if the order contains (1) a present finding of contempt and (2) an imposition of sanctions." **Hanbicki v. Leader**, 294 A.3d 1234, 1239 (Pa. Super. 2023) (citation omitted); **see also Foulk v. Foulk**, 789 A.2d 254, 257 (Pa. Super. 2001) (*en banc*). "[F]or a contempt order to be properly appealable, it is only necessary that the order

_____

failure to raise an issue in a concise statement results in its waiver, **see** Pa.R.A.P. 1925(b)(4)(vii), in our Order discharging the Rule to Show Cause raising these questions, we advised Mother "that these issues may be revisited by the panel assigned to decide the merits of this case," and directed Mother to address them in her brief before this Court. Order, 7/17/2024. We therefore review the merits of these claims **See K.M.G. v. H.M.W.**, 171 A.3d 839, 841 (Pa. Super. 2017) ("This Court may examine appealability sua sponte because it affects our jurisdiction over the matter.") (quotation marks, brackets, and citations omitted); **see also M.B.S. v. W.E.**, 232 A.3d 922, 927 (Pa. Super. 2020) (stating that this Court "may address mootness sua sponte, as we generally cannot decide moot or abstract questions, nor can we enter a judgment or decree to which effect cannot be given") (quotation marks and citations omitted).

impose sanctions on the alleged contemnor, and that no further court order be required before the sanctions take effect." *Foulk*, 789 A.2d at 257-58.

The record reflects that the trial court found Mother in contempt and imposed a sanction on her: "The [trial] court finds Mother in contempt of [the May 8, 2024] court order. As a sanction for said contempt, Mother shall forfeit her Sunday period of supervised partial physical custody on Sunday, June 2, 2024." Trial Court Order, 5/31/2024 (unnecessary capitalization omitted). No further order by the trial court was required before the sanction became effective. Accordingly, the May 31, 2024 order is final and appealable. *See Foulk*, 789 A.2d at 257-58 (concluding trial court order was a final and appealable where it adjudged husband in civil contempt and sanctioned him to three months of incarceration unless he satisfied the purge condition of payment to former wife).

Because Mother's period of supervised partial physical custody on June 2, 2024, has already been forfeited, we next address whether Mother's appeal is moot. Mother argues that an exception to the mootness doctrine applies because "the forfeiture of custodial time as a sanction for contempt [] is capable of repetition and apt to evade review" as "the period of time between the order being issued and the sanction taking effect" is "too brief to permit full litigation of the issue." Mother's Brief at 13.

As noted above, this Court generally cannot decide moot questions. *M.B.S.*, 232 A.3d at 927.

As a general rule, an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot. An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an intervening change in the applicable law. In that case, an opinion of this Court is rendered advisory in nature. An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.

This Court will decide questions that otherwise have been rendered moot when one or more of the following exceptions to the mootness doctrine apply: 1) the case involves a question of great public importance, 2) the question presented is capable of repetition and apt to elude appellate review, or 3) a party to the controversy will suffer some detriment due to the decision of the trial court.

*Orfield v. Weindel*, 52 A.3d 275, 277-78 (Pa. Super. 2012) (citation omitted).

Instantly, the certified record shows that Mother is still subject to the May 8, 2024 order and any noncompliance with that order could again subject her to civil contempt proceedings and sanctions. If Mother again violates the May 8, 2024 order, nothing in the certified record prevents the trial court from finding her in contempt and again imposing the same sanction, i.e., forfeiting periods of visitation with Child. Further, as this appeal illustrates, a future sanction of forfeited visitation is almost certainly too short in duration to permit our review, rendering any challenge thereto moot once again. As a result, we conclude that we may decide Mother's appeal as it presents questions that are capable of repetition and apt to elude appellate review and is therefore excepted from the mootness doctrine. *See id.* at 278 (determining an appeal from a civil contempt order was excepted from the

mootness doctrine where the trial court sanctioned father to six months of incarceration and father served the entire term, but had not paid off his arrears and was still subject to the trial court's order to make monthly payments); *see also Warmkessel v. Hefner*, 17 A.3d 408, 413 (Pa. Super. 2011) (holding that appellant met an exception to the mootness doctrine when, even though he had completed his sentence, he remained subject to the same order, he might face civil contempt proceedings again, and he and other similarly situated appellants could raise the same claim in the future).

**Finding of Contempt**

In her next two issues, Mother argues that the trial court erred when it found her in contempt of the May 8, 2024 order and sanctioned her to forfeit a period of supervised custody. Mother's Brief at 21-31. Mother challenges the trial court's order as not definite, clear, and specific regarding her duty to ensure supervision or any distance requirement for supervision. *Id.* at 22-28. She also contends that there was no evidence that she intentionally violated the supervised custody condition. *Id.* Mother further assails Father's testimony as inconsistent and lacking credibility and the trial court's conclusion that Mother's photographs admitted at the hearing were irrelevant. *Id.* at 24-25.

"In reviewing a trial court's finding on a contempt petition, we are limited to determining whether the trial court committed a clear abuse of discretion. This Court must place great reliance on the sound discretion of the

trial court when reviewing an order of contempt." ***Rogowski v. Kirven***, 291 A.3d 50, 57 (Pa. Super. 2023) (quotation marks, brackets, and citation omitted). "Each court is the exclusive judge of contempts against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from failing into disrepute." ***Habjan v. Habjan***, 73 A.3d 630, 637 (Pa. Super. 2013) (citations omitted).

> To be in contempt, a party must have violated a court order, and the complaining party must satisfy that burden by a preponderance of the evidence. Specifically, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he, or she, is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent.

***Rogowski***, 291 A.3d at 57 (quotation marks, brackets, and citation omitted).

"Assessments of credibility and conflicts in evidence are for the trial court to resolve; this Court is not permitted to reexamine the weight and credibility determinations or substitute our judgments for those of the factfinder." ***Gutteridge v. J3 Energy Group, Inc.***, 165 A.3d 908, 916 (Pa. Super. 2017) (citation omitted). "[T]his Court defers to the credibility determinations of the trial court with regard to the witnesses who appeared before it, as that court has had the opportunity to observe their demeanor." ***Habjan***, 73 A.3d at 644 (citation and quotation marks omitted).

In finding Mother in contempt of the May 8, 2024 order, the trial court stated the following:

During the contempt hearing, Father testified unequivocally that he personally observed [the supervisor] over two hundred [] yards away from the location of Mother and [Child]. Furthermore, Father called [] Richards, an ex-husband and father to three of Mother's seven children, to testify as to [the supervisor's] lack of supervision. Both were subject to rigorous cross-examination by Mother's counsel. Th[e trial c]ourt found their testimony to be entirely credible.

Based upon their testimony, th[e trial c]ourt found Mother in contempt of the order [entered May 8, 2024].

Trial Court Opinion, 7/2/2024, at 1-2 (unpaginated) (party names supplied).

The record confirms the trial court's findings. Mother had a period of supervised partial physical custody of seven of her children, including Child, on Sunday, May 12, 2024, at Buhl Park. N.T., 5/30/2024, at 9. Father testified that he observed this visit from his vehicle and saw the supervisor "well over 200 yards away from the park" and "200 plus yards away from the children at all times." *Id.* at 8-10. He testified that the supervisor was "not watching" Child or Mother's other children who were there. *Id.* at 10. Richards confirmed Father's testimony. *Id.* at 21-22.

Mother explained during her testimony that the supervisor had just had "internal surgery" and was not "supposed to even be out, but he was present with the kids the entire time." *Id.* at 29. She also presented, and the trial court admitted, photographs of the supervisor with the children. *See id.*, Exs. 1-3. The trial court specifically found Father and Richards' testimony credible, stating "I believe these gentlemen that [the supervisor] was not in the area." *Id.* at 35; *see also id.* at 34. The trial court, while noting that the supervisor

- 11 -

was likely not feeling well, recognized that it "had two witnesses here to testify that the supervision wasn't there. … [The] order was very clear that there was to be supervision the entire time and that means where the children are, period." *Id.* at 35.

The trial court's order was clear, definite, and specific regarding Mother's obligation to ensure Child was supervised during her periods of partial physical custody. *See* Trial Court Order, 5/8/2024, ¶ 1. Further, Mother testified that she knew the order required her Sunday periods of partial physical custody to be supervised. N.T., 5/30/2024, at 27.

We do not find merit in Mother's arguments that the order was not specific because it failed to specify a distance for supervision or that there was no evidence of Mother's intent to violate it. First, in finding Mother in contempt, the trial court agreed with Father that "supervising" from over 200 yards away does not constitute supervision. While the supervisor was present in the park and Mother presented photographs showing him with the children, those pictures were anecdotal—single points in time—and the trial court did not find the supervisor was always with the children or that his physical presence over 200 yards away (as observed by Father and his witness) equated to supervision. Mother's argument asks us to reweigh the trial court's factual findings, which is not within our purview as an appellate court. *See Gutteridge*, 165 A.3d at 916; *Habjan*, 73 A.3d at 644.

Further, based on Mother's own account that she brought her paramour to supervise seven children when he was still recovering from surgery and not supposed be "out," the trial court could infer from her actions that Mother wrongfully intended to violate the court's order by failing to ensure that Child and her other children were always supervised in the park during her custodial time. **See Jordan v. Pennsylvania State University**, 276 A.3d 751, 766-67 (Pa. Super. 2022) ("When making a determination regarding whether a defendant acted with wrongful intent, the court should use common sense and consider context, and wrongful intent can be imputed to a defendant by virtue of the substantial certainty that his actions will violate the court order.") (citation, quotation marks, and brackets omitted).

We conclude the record supports the trial court's factual findings, and we defer to the trial court's weight and credibility determinations. **Gutteridge**, 165 A.3d at 916; **Habjan**, 73 A.3d at 644.  Therefore, the trial court did not abuse its discretion in finding Mother in contempt, as she had notice of the order in question, willfully failed to comply with the order, and acted with wrongful intent. **See Rogowski**, 291 A.3d at 57.

## Sanction

Lastly, Mother contends that the trial court's order to forfeit custodial time as a sanction for her contempt was improper pursuant to section 5323(g) of the Child Custody Act.  Mother's Brief at 28-31 (citing 23 Pa.C.S. § 5323(g)).  Section 5323(g) provides as follows:

(1) A party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:

    (i) Imprisonment for a period of not more than six months.

    (ii) A fine of not more than $500.

    (iii) Probation for a period of not more than six months.

    (iv) An order for nonrenewal, suspension or denial of operating privilege under [23 Pa.C.S § 4355] (relating to denial or suspension of licenses).

    (v) Counsel fees and costs.

(2) An order committing an individual to jail under this section shall specify the condition which, when fulfilled, will result in the release of that individual.

23 Pa.C.S. § 5323(g).[7]

Under the plain language of the statute, forfeiture of partial supervised physical custody is not an enumerated sanction under section 5323(g) that may be imposed for an act of contempt in a custody matter. *See* 23 Pa.C.S. §5323(g). Indeed, the trial court acknowledges this in its opinion:

[The trial c]ourt concedes the sanction imposed is not specifically listed as a sanction under 23 Pa.C.S. § 5323(g). However, the Father was pro se in this matter. Therefore, counsel fees and costs under [section] 5323(g)(1)(v) could not be imposed. Likewise, imprisonment under [section] 5323(g)(1)(i) was inappropriate because the contempt was not ongoing, and there was no condition to be fulfilled for release pursuant to [section] 5323(g)(2). Finally, in [the trial c]ourt's opinion, Mother's actions did not warrant a fine, probation, or a license suspension.

---

[7] We note that while section 5323 was amended effective August 13, 2024, subsection (g) remains the same. *See* P.L. 24, No. 8 § 3 (Apr. 15, 2024).

Trial Court Opinion, 7/2/2024, at 2 (unpaginated) (party names supplied).

While we appreciate the trial court's candor, the language of the statute is clear, and we therefore must conclude that it erred in requiring Mother to forfeit a period of custody as a sanction for contempt of the May 8, 2024 custody order. *See Rogowski*, 291 A.3d at 60 (holding that the trial court erred when it sanctioned mother to attend co-parent counseling sessions after finding her in contempt of a custody order because the sanction was not enumerated under section 5323(g)). Accordingly, we vacate this portion of the May 31, 2024 order. *See id.* (vacating the sanction portion of a trial order where it was not authorized by section 5323(g)).

Although we vacate this portion of the order, we need not remand the case for further proceedings because the sanction was already imposed and completed—Mother missed her three-hour supervised visit with Child on June 2, 2024. *Cf. id.* (remanding to the trial court for the imposition of a different sanction that complies with section 5323(g); mother had not yet fulfilled the trial court's sanction). Indeed, remanding for further proceedings to enable the trial court to impose an additional sanction is unnecessary, as the purpose of the contempt was to address Mother's failure to comply with his custody order. Accordingly, we strike the portion of the order that imposed the sanction of forfeiture of a period visitation.

## Conclusion

Based on the foregoing, we vacate the portion of the trial court's May 8, 2024 order imposing the sanction of forfeiture of one period of supervised partial physical custody and affirm the order in all other respects.[8]

Order affirmed in part and vacated in part. Jurisdiction relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

12/30/2024

---

[8] In light of our disposition to vacate the sanction portion of the trial court's order, we need not address Mother's final issue regarding whether the trial court improperly modified the custody order based upon its sanction of forfeiture of a period of supervised custody.